GAINES, APPELLANT, *v.* PRETERM-CLEVELAND, INC., APPELLEE.

[Cite as Gaines *v.* Preterm-Cleveland, Inc. (1987), 33 Ohio St. 3d 54.]

(No. 86-1881—Decided October 21, 1987.)

*Strachan, Green, Miller, Olender & Hobt* and *Robert G. Miller,* for appellant.

*Arter & Hadden, Curtiss L. Isler* and *Irene C. Keyse-Walker,* for appellee.

DOUGLAS, J. The instant appeal presents two distinct issues for our review and determination. The first is whether a positive misrepresentation of a patient's condition, upon which the patient reasonably relies to his detriment, constitutes a cause of action in fraud independent of any claim of malpractice. We hold that the allegations advanced by appellant generated a genuine issue of fact as to whether fraud occurred, a cause of action which we deem to be cognizable under these facts. The second question is whether plaintiffs in medical malpractice actions who reasonably do not discover the cause of their injuries until more than three years after the act constituting the alleged malpractice may constitutionally be deprived of a full year to pursue a medical claim by virtue of the four-year statute of repose contained in R.C. 2305.11(B). We rule that such deprivation violates the Constitution of the state of Ohio.

I

Appellant argues that the allegations in her complaint state a cause of action in fraud, separate and independent from malpractice, and that such cause of action was timely filed under R.C. 2305.09. We agree.

The elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Burr* v. *Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St. 3d 69, 23 OBR 200, 491 N.E. 2d 1101, paragraph two of the syllabus; *Cohen* v. *Lamko, Inc.* (1984), 10 Ohio St. 3d 167, 10 OBR 500, 462 N.E. 2d 407.

A review of appellant's complaint and of the evidence reveals that the allegations therein clearly establish a jury question on the issue of fraud, rendering the trial court's entry of summary judgment inappropriate. This conclusion is particularly compelling given the requirement of Civ. R. 56(C) that the evidence must be construed most strongly in favor of appellant, against whom the motion for summary judgment was made.

From the allegations and supporting evidence, a reasonable person could conclude that all six of the elements of an action in actual fraud are present in this case. The first element, the representation of a fact, is satisfied by appellant's assertion that she was told by appellee's agents or employees that her IUD had been removed. This representation was material to the transaction at hand, since appellant had consulted appellee for the very purpose of having the IUD removed. The second element is thereby fulfilled. A reasonable person could also conclude that the third element of knowing falsity is present, given the evidence that the IUD had not been removed, and that appellee knew that it had not. It could reasonably be believed that the representation was made with the intent of inducing appellant to rely on it, since reliance was to be expected under the circumstances, and such reliance would benefit appellee by lulling appellant into a false belief that she had been successfully treated. The fifth element of justifiable reliance may reasonably be deemed to have occurred, since appellant had no apparent reason to doubt the veracity of the statement, and insufficient training to evaluate its accuracy. Finally, it could reasonably be concluded that appellant's abdominal pain and gynecological problems were caused by the unretrieved IUD, which had perforated her uterus and become embedded in her left ligament.

A jury question is clearly generated under these facts such that the entry of summary judgment was inappropriate. We cannot agree with the court of appeals' conclusion that these allegations sounded in malpractice only. A physician's knowing misrepresentation of a material fact concerning a patient's condition, on which the patient justifiably relies to his detriment, may give rise to a cause of action in fraud independent from an action in medical malpractice. Annotation (1973), 49 A.L.R. 3d 501, 506; *Leach* v. *Shapiro* (1984), 13 Ohio App. 3d 393, 397, 13 OBR 477, 482, 469 N.E. 2d 1047, 1054. The fraud action is separate and distinct from the medical malpractice action which stems from the surrounding facts where the decision to misstate the facts cannot be characterized as medical in nature.[1] In the instant cause, it cannot be said that the statement to appellant that her IUD had been removed when in fact it had not was motivated by any medical consideration. Cases may exist where the withholding of information may be medically justified, *e.g.*, where the patient's known tendency to react hysterically to bad news would interfere with vital treatment. Reasonable minds could certainly conclude that the misstatement in the instant cause was prompted not by medical concerns but by motivations unrelated and even antithetical to appellant's physical well-being.

As a cause of action separate and distinct from medical malpractice, a claim of fraud is subject not to the medical malpractice statute of limitations contained in R.C. 2305.11, but rather to R.C. 2305.09,[2] which pro-

---

[1] While the issue is not before us, and therefore we do not discuss it at any length, we recognize that, due to the special relationship of physician to patient, there would also be a duty to disclose to a patient a known material fact concerning the patient's medical condition. Here, the allegation is only that a misrepresentation was made, and therefore that is the sole matter with which we deal.

[2] R.C. 2305.09 provides in pertinent part:

"An action for any of the following

vides a four-year limitations period for fraud. The statutory period does not commence to run until the cause of action accrues, which occurs when the fraud and the wrongdoer are discovered. R.C. 2305.09; *Burr, supra,* at paragraph three of the syllabus. In the instant cause, reasonable minds could conclude that appellant did not discover the existence of the fraud and the identity of the wrongdoer until October 18, 1983, when the IUD which appellee told her had been removed was found still inside her body. Appellant's complaint was filed April 11, 1985, less than four years after the accrual of her cause of action. Hence, her complaint for fraud could reasonably be deemed to have been timely filed, and summary judgment was therefore improper.

## II

We turn now to a consideration of appellant's arguments concerning the constitutionality of R.C. 2305.11(B), the four-year statute of repose for medical malpractice actions. This court has been confronted with this issue in varying fact patterns on several recent occasions.

In *Mominee* v. *Scherbarth* (1986), 28 Ohio St. 3d 270, 28 OBR 346, 503 N.E. 2d 717, this court held that "R.C. 2305.11(B) is unconstitutional as applied to minors under the due course of law provisions of the Ohio Constitution. * * *" *Id.* at syllabus. Thus, the statute was struck down as invalid with regard to some, but not all medical malpractice litigants.

*Mominee* was succeeded by *Hardy*

v. *VerMeulen* (1987), 32 Ohio St. 3d 45, 512 N.E. 2d 626, in which we held that "R.C. 2305.11(B), as applied to bar the claims of medical malpractice plaintiffs who did not know or could not reasonably have known of their injuries, violates the right-to-a-remedy provision of Section 16, Article I of the Ohio Constitution." *Id.* at syllabus. Although *Hardy* has been widely interpreted as holding that R.C. 2305.11(B) is unconstitutional in its entirety, it should be observed that the language of the syllabus is not as broad as it may have seemed. Carefully read, the *Hardy* syllabus provides that R.C. 2305.11(B) is unconstitutional only "as applied to bar the claims of medical malpractice plaintiffs who did not know or could not reasonably have known of their injuries * * *."

Thus, after *Mominee* and *Hardy,* the four-year statute of repose cannot constitutionally bar the claims of minors or of those plaintiffs who, in the exercise of reasonable diligence, discovered their injuries only after the four years had already passed. Consequently, the only question remaining is whether R.C. 2305.11(B) can be constitutionally applied to bar the claims of medical malpractice litigants who discover their malpractice injuries before the four-year repose period expires, but at such a time as affords them less than one full year to pursue their claims. This is the precise issue raised by this case.

The availability to appellant of less than a full year to seek legal recourse is significant due to this court's interpretation of R.C. 2305.11(A), in which

---

causes shall be brought within four years after the cause thereof accrued:
"* * *
"(C) For relief on the ground of fraud * * *.
"If the action is for trespassing under

ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered."

we concluded that the legislature intended medical malpractice litigants to have one year to pursue their claims, commencing on the date the particular plaintiff discovered, or reasonably should have discovered, the injury resulting from the malpractice. *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438.[3] The question presented by the instant cause is whether the legislation can constitutionally endow some, but not all, medical malpractice claimants with a meaningful period in which to institute legal action. We hold that the distinction drawn in the legislation, between those who discover their claims in time to enjoy a full year to organize a legal action, and those who do not, does not rationally further the goal of alleviating the alleged medical malpractice crisis in this state.

Our analysis of the question of whether R.C. 2305.11(B) violates the rights of medical malpractice litigants to equal protection of the law[4] must be conducted according to the "rational basis" test, since this case involves neither a fundamental right nor a suspect class. See *Schwan* v. *Riverside Methodist Hosp.* (1983), 6 Ohio St. 3d 300, 301, 6 OBR 361, 363, 452 N.E. 2d 1337, 1338. Under this test, the statute must be upheld " 'if there exists any conceivable set of facts under which the classification rationally furthered a legitimate legislative objective.' " *Id.,* quoting *Denicola* v. *Providence Hosp.*

(1979), 57 Ohio St. 2d 115, 119, 11 O.O. 3d 290, 293, 387 N.E. 2d 231, 234.

The objective of the legislature in enacting R.C. 2305.11(B) was to remedy the perceived crisis in the area of medical malpractice. *Schwan, supra,* at 301-302, 6 OBR at 363, 452 N.E. 2d at 1339. The distinction under review in the instant cause is between those medical malpractice plaintiffs who discover their injuries within three years from the date of the act or omission constituting the malpractice, and those who do not. The former class of litigants will have a full year to pursue their claims under *Oliver*; the absolute four-year bar of R.C. 2305.11(B) would not come into play to curtail that full-year period. However, a person injured by malpractice who, in the exercise of reasonable diligence, does not discover his injury until more than three but less than four years after the act constituting the malpractice will have less than a year to institute legal action before the four-year bar intervenes to cut off his rights. This person is unique in the law of medical malpractice. He has the misfortune of belonging to the only class of litigants who do not have a reasonable period for seeking legal recourse. In some cases, the time for instituting suit will be reduced to a few days. A person in this class of plaintiffs is not any less injured than other malpractice victims. Nor has he been less vigilant in monitoring the quality of his medical care. Yet his legal rights are abridged

---

[3] The additional issue currently being dealt with by this court and often confused with the question now before us is when the statute of limitations in R.C. 2305.11(A) begins to run. Currently, this court is divided on whether the statute begins to run on the date the "injury" is discovered or the date that it is discovered that the injury was caused by malpractice. See *Hoffman* v.

*Davidson* (1987), 31 Ohio St. 3d 60, 31 OBR 165, 508 N.E. 2d 958; *Frysinger* v. *Leech* (1987), 32 Ohio St. 3d 38, 512 N.E. 2d 337.

[4] Section 2, Article I of the Ohio Constitution provides in part:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *."

and even cut off completely for no other reason than the fortuity of timing. We fail to discern any rational basis for distinguishing such a plaintiff from other medical malpractice litigants. The injury suffered is no less real, nor is the claim necessarily less meritorious.

We recognize, of course, that the legislature was attempting to further a goal entirely within its powers. This court does not interfere lightly with the methods chosen by the General Assembly to achieve permissible ends. However, we cannot elevate our deference to legislative wisdom over our duty to uphold the Constitution of this state.

" 'Legislation must apply alike to all persons within a class, and reasonable grounds must exist for making a distinction between those within and those without a designated class.' " *Schwan, supra,* at 302, 6 OBR at 363, 452 N.E. 2d at 1339, quoting *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143, 30 O.O. 2d 491, 205 N.E. 2d 363, paragraph two of the syllabus. No reasonable grounds can be conceived which would justify denying a full year for filing a claim to a single class of litigants based solely on when they were able to discover the existence of a claim. It follows that R.C. 2305.11(B) is not rationally calculated to further the legislature's legitimate objective. Accordingly, as applied in this case, we conclude that R.C. 2305.11(B) is violative of the right to equal protection guaranteed by Section 2, Article I of the Ohio Constitution.

Even if this court were to hold that R.C. 2305.11(B) does not violate the Ohio Constitution's guarantee of equal protection, the statute must still fail on the ground that it denies appellant and others similarly situated due process of law under the Constitution of Ohio:

"A legislative enactment will be deemed valid on due process grounds '* * * [1] if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and [2] if it is not unreasonable or arbitrary.' " *Mominee, supra,* at 274, 28 OBR at 349-350, 503 N.E. 2d at 720-721, quoting *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 40 O.O. 2d 113, 146 N.E. 2d 854, paragraph five of the syllabus.

Where a person injured by malpractice cannot reasonably discover the injury within three years after the act constituting the malpractice, R.C. 2305.11(B) cuts off the right of that individual to pursue his claim without affording him a reasonable alternative. Although it may be stated that this severance of rights might conceivably bear "a real and substantial relation to the * * * general welfare of the public" by decreasing the sheer numbers of medical malpractice claims, thereby reducing malpractice insurance premiums and lessening the cost of health care, no evidence of such an effect has been brought forward. However, even assuming that R.C. 2305.11(B) has actually achieved this end, we find the means of achieving it are unreasonable and arbitrary, and therefore violative of due process.

As explained *supra,* the severance of an individual's right to pursue a claim based on when he discovers the existence thereof is not justified by any distinguishing feature of such a person or of his claim. The fact that he did not discover his claim until after three years had passed does not necessarily indicate that he "slept on his rights" since in many cases he will be unaware that he had any rights. *Oliver, supra,* at 114, 5 OBR at 249, 449 N.E. 2d at 441. Nor does the relative delay in his discovery suggest that the injury is trivial or the claim unfounded. In sum, we can envision no reason for cutting off the rights of such plaintiffs that is not unreasonable or arbitrary.

Furthermore, the effect of R.C. 2305.11(B) as to plaintiffs who could not discover their injuries until more than three years have passed is to curtail their time for pursuing their claim to less than a year. This court has held that a legislative enactment may lawfully shorten the period of time in which the remedy may be realized "as long as the claimant is still afforded a reasonable time in which to enforce his right." *Adams* v. *Sherk* (1983), 4 Ohio St. 3d 37, 39, 4 OBR 82, 84, 446 N.E. 2d 165, 167. A "reasonable time" in which to bring a medical malpractice claim was defined in *Adams* as "one year after the discovery of the malpractice." *Id.* at 40, 4 OBR at 85, 446 N.E. 2d at 168. In the instant cause, appellant had approximately six and one-half months in which to pursue her claim, since the date of discovery was October 18, 1983, and the four-year bar intervened on April 30, 1984. Other plaintiffs in appellant's class may have a much shorter time in which to file. Thus, R.C. 2305.11(B) cannot lawfully be applied to appellant and others similarly situated, since it affords them less than a reasonable time in which to bring a claim, *Adams, supra,* and thus denies them their constitutional right to due process. *Lafferty* v. *Shinn* (1882), 38 Ohio St. 46, 48.

Accordingly, we hold that R.C. 2305.11(B) violates the due-course-of-law provision of the Ohio Constitution.

Our continuing analysis leads us to yet another constitutional infirmity in R.C. 2305.11(B). Appellant contends that the statute violates the "open court" provision of Section 16, Article I of the Ohio Constitution, which provides in pertinent part:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

We agree with appellant's contention that R.C. 2305.11(B) violates the above constitutional provision. This conclusion follows logically from our recent decision in *Hardy* v. *VerMeulen, supra,* in which we held that R.C. 2305.11(B) cannot constitutionally be applied to bar the claims of plaintiffs who are not reasonably able, within four years, to know of the injury they sustained. In so holding, we stated that "[w]hen the Constitution speaks of remedy and injury to person, property or reputation, it requires an opportunity granted *at a meaningful time and in a meaningful manner.*" (Emphasis added.) *Id.* at 47, 512 N.E. 2d at 628. As noted *supra,* neither appellant nor others similarly situated have been granted a reasonable, meaningful opportunity to pursue a claim. *Hardy's* analysis was based on a recognition that R.C. 2305.11(B) denies a remedy to plaintiffs who were not able to discover their claims within the four-year period. Our analysis is based on a similar recognition that R.C. 2305.11 (B) denies a *meaningful* remedy to plaintiffs who discovered their claims within the four-year period, but at such a time that less than a year remained for pursuit of that claim. Denial of a remedy and denial of a *meaningful* remedy lead to the same result: an injured plaintiff without legal recourse. This result cannot be countenanced.

It should additionally be said that R.C. 2305.11(B) is simply unfair. Consider the following scenario: Plaintiffs A and B are both injured by malpractice on June 1, 1982. Plaintiff A, in the exercise of reasonable diligence, does not discover that he has a claim until May 31, 1986. Plaintiff B, in the exercise of due care, discovers, on June 2, 1986, that he has a cause of action. Under the state of the law as it existed before today, Plaintiff A would have one day to pursue his claim, while Plaintiff B would have a full year plus

one hundred eighty days if Plaintiff B proceeded in accordance with the first and second paragraphs of R.C. 2305.11(A). This was so even though discovery in these examples occurred within two days of each other, and notwithstanding the fact that both plaintiffs were equally injured and equally diligent in discovering their claims. Although unfairness by itself is insufficient to support a finding of unconstitutionality, we believe that this example sheds yet more light on the reasons why R.C. 2305.11(B) does not comport with the requirements of due process.

In conclusion, based on the foregoing, we hold that R.C. 2305.11(B) is unconstitutional as applied to adult medical malpractice litigants who, following discovery, do not have the time provided by R.C. 2305.11(A) in which to file their actions.

Consequently, the rule to be applied to all medical malpractice litigants is that contained in R.C. 2305.11(A), as interpreted by this court in *Frysinger* v. *Leech* (1987), 32 Ohio St. 3d 38, 512 N.E. 2d 337. "Under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the one-year statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later." *Id.* at paragraph one of the syllabus.

Accordingly, the judgment of the court of appeals is hereby reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SWEENEY and LOCHER, JJ., concur.

HOLMES and H. BROWN, JJ., separately concur in the syllabus and judgment.

MOYER, C.J., and WRIGHT, J., concur in part and dissent in part.

HOLMES, J., concurring in syllabus and judgment. I concur in the syllabus law and judgment announced by today's decision. Just last term, in *Richards* v. *St. Thomas Hospital* (1986), 24 Ohio St. 3d 27, 30, 24 OBR 71, 73, 492 N.E. 2d 821, 824, I indicated that the only non-application of the four-year statute of repose "is that instance where it is shown by clear and convincing evidence that there has been a fraudulent concealment of the cause of the alleged malpractice." (Holmes, J., concurring.) Thus, I fully embrace the recognition of a wholly separate cause of action for fraud as stated in paragraph one of the syllabus. I also concur in paragraph two of the syllabus. However, I write separately to clarify the scope of our decision with respect to R.C. 2305.11(B). This court had previously upheld the constitutionality of the four-year statute of repose as not being violative of the Equal Protection Clause of the Ohio Constitution, except insofar as it applied to minors, in *Opalko* v. *Marymount Hospital, Inc.* (1984), 9 Ohio St. 3d 63, 9 OBR 267, 458 N.E. 2d 847. See, also, *Mominee* v. *Scherbarth* (1986), 28 Ohio St. 3d 270, 294, 28 OBR 346, 366, 503 N.E. 2d 717, 735 (Holmes, J. dissenting). However, our recent decision in *Hardy* v. *VerMeulen* (1987), 32 Ohio St. 3d 45, 512 N.E. 2d 626, has significantly changed the landscape surrounding this four-year absolute bar.

Although I dissented in *Hardy*, I must now accept the fact that it is the

law of Ohio. The application of this law operates to place Mrs. Gaines in a disfavored class of medical malpractice plaintiffs who, upon discovery of their injuries,[5] had less than a full year to file their claims because of R.C. 2305.11(B). Inasmuch as plaintiffs who discover their injuries less than three years or more than four years after the act of malpractice will now always have the full one-year period of R.C. 2305.11(A) in which to bring their claims, no rational basis remains for distinguishing these plaintiffs from those in Mrs. Gaines' position. Therefore, equal protection rights of those in Mrs. Gaines' class should be protected. However, today's decision applies solely to plaintiffs in the class shared by Mrs. Gaines herein, and extends the right to file under R.C. 2305.11(A). This decision does not strike the statute on its face, and does not extend to other plaintiffs who may still find their causes of action barred by R.C. 2305.11(B).

HERBERT R. BROWN, J., concurring. I join in the judgment, syllabus and well-reasoned opinion of Justice Douglas with respect to the misrepresentation issue. I further agree that, as applied to the facts of this case, R.C. 2305.11(B) violates the Equal Protection Clause of the Ohio Constitution. However, I cannot see that either the Due Process Clause or the right-to-a-remedy provision of the Ohio Constitution presents a constitutional obstacle to R.C. 2305.11(B) on the facts of the cause *sub judice*.

I make this observation because I believe that R.C. 2305.11(B) may pass constitutional muster as a limitation on those malpractice actions where a plaintiff has one year in which to file (or send a letter of notice) after an injury has been, or in the exercise of reasonable diligence should have been, discovered.

MOYER, C.J., concurring in part and dissenting in part. I write separately to:

(1) concur in paragraph two of the syllabus;

(2) concur in that portion of the separate concurrence of Justice Brown in which he observes that "[n]either the Due Process Clause [n]or the right-to-a-remedy provision of the Ohio Constitution presents a constitutional obstacle to R.C. 2305.11(B) on the facts of the cause *sub judice*," and his observation that R.C. 2305.11(B) "may pass constitutional muster" as a limitation on certain malpractice actions;

(3) concur in that portion of Justice Holmes' separate concurrence which applies the result in *Hardy* v. *VerMeulen* (1987), 32 Ohio St. 3d 45, 512 N.E. 2d 626, to recognize plaintiff's equal protection rights; and

(4) dissent from the majority holding that plaintiff stated a separate cause of action for actual fraud. In her amended complaint, Gaines alleged medical malpractice and misrepresentation. Although fraud is to be pleaded with particularity, not until Gaines' memo contra the defendant's motion

---

[5] This court has established in numerous decisions that a cause of action for medical malpractice accrues, *not* upon discovery of the malpractice, but upon discovery of the resulting injury. See, *e.g.*, *Frysinger* v. *Leech* (1987), 32 Ohio St. 3d 38, 512 N.E. 2d 337, paragraph one of the syllabus; *Deskins* v. *Young* (1986), 26 Ohio St. 3d 8, 14, 26 OBR 7, 12, 496 N.E. 2d 897, 901 (Holmes, J., dissenting); *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438.

for summary judgment does she characterize her claim as sounding in both malpractice and constructive fraud. Actual fraud was never pleaded and the reversal of summary judgment in favor of the defendant because genuine issues of material fact exist with respect to a cause of action in actual fraud is therefore unfounded.

This case presents the question of whether an alleged misrepresentation to a patient as to her condition in the course of medical treatment may give rise to a cause of action for constructive fraud. "Constructive fraud does not require proof of fraudulent intent; the law indulges in an assumption of fraud for the protection of valuable social interests based upon an enforced concept of confidence both public and private. * * *" *Perlberg* v. *Perlberg* (1969), 18 Ohio St. 2d 55, 58, 47 O.O. 2d 167, 169, 247 N.E. 2d 306, 308. The law with respect to medical malpractice already promotes necessary care and diligence by physicians in disclosing information to their patients. Furthermore, in view of *Hardy's* impact upon the filing of claims for malpractice, there is no reason to strain to recognize a fraud action in this case. Thus, I am unable to conclude that the law should indulge in an assumption of fraud to establish an action for constructive fraud to protect the social interests in maintaining the trust and confidence reposed in the physician-patient relationship.

Therefore, rather than convert plaintiff's constructive fraud case into an actual fraud case, as the majority has done, I would decide this issue by applying the "essence of the claim" test to the causes of action pleaded by plaintiff. Courts must look to the actual nature or subject matter of a case in examining a pleading to determine which statute of limitations applies. The form in which the action is pleaded as a matter of remedial procedure does not control that decision because it is the basis or grounds for bringing the action that determines the actual nature of the cause of action. *Kunz* v. *Buckeye Union Ins. Co.* (1982), 1 Ohio St. 3d 79, 1 OBR 117, 437 N.E. 2d 1194; *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161, 63 O.O. 2d 262, 297 N.E. 2d 113; *Andrianos* v. *Community Traction Co.* (1951), 155 Ohio St. 47, 44 O.O. 72, 97 N.E. 2d 549; *State, ex rel. Lien,* v. *House* (1944), 144 Ohio St. 238, 29 O.O. 399, 58 N.E. 2d 675.

Because I believe it is very difficult, at best, to draw or establish a bright-line test under which an action is either an action for constructive fraud or the negligent dispersal of information to a patient, I would hold that the gist of plaintiff's allegations constitutes an action for medical malpractice. Although I agree that paragraph one of the syllabus is a desirable statement of the law, it does not apply to, and therefore should not be stated as the law of, this case. For the foregoing reasons, I concur in the majority judgment only on the basis of the second paragraph of the syllabus.

WRIGHT, J., concurs in the foregoing opinion.