**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0859n.06
Filed: November 22, 2006

**No. 05-4163**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

GENERAL ELECTRIC MEDICAL SYSTEMS EUROPE, INC., )
)
)
    Plaintiff-Appellee, )
)
v. )  ON APPEAL FROM THE UNITED
)  STATES DISTRICT COURT FOR
)  THE NORTHERN DISTRICT OF
PROMETHEUS HEALTH IMAGING, INC., and )  OHIO
DR. MUNIR UWAYDAH, )
)
    Defendants-Appellants. )
)
)
)

Before: SILER, McKEAGUE, and GRIFFIN, Circuit Judges.

**PER CURIAM.** Defendants Prometheus Health Imaging, Inc. ("Prometheus") and Dr. Munir Uwaydah, a Prometheus principal, appeal the grant of summary judgment in favor of Plaintiff General Electric Medical Systems Europe ("GEMS") for breach of contract, fraud, and conversion. For the reasons set forth below, we AFFIRM the judgment finding Uwaydah personally liable for fraud. Because GEMS seeks the same remedy in its breach of contract and conversion claims as it does under its fraud theory, the claims are moot.

**I.**

In 2001, Prometheus and Al Bandar International Group ("ABIG"), a third party, organized under the laws of Saudi Arabia, entered into a joint venture to establish a medical imaging center in Riyadh. The agreement required Prometheus to procure a CT scanner to be utilized by ABIG in Riyadh, and Prometheus would perform imaging analysis services in the United States. Prometheus contracted to buy a scanner from GEMS for $1,070,000 with a 10% down payment, 50% due at shipment, 30% due at delivery, and the rest due upon complete installation.

ABIG executed a letter-of-credit ("LOC") in the amount of $1,000,000 naming Prometheus as beneficiary. ABIG initially released $200,000 of the funds from the LOC, and Prometheus used $107,000 to make the down payment required by the contract. The release of the balance of funds under the LOC was contingent upon GEMS's satisfaction of Saudi Arabian import and shipping documentation requirements.

Several circumstances, including the events of September 11, 2001, delayed GEMS's compliance with the contract and GEMS failed to properly execute certain documents. Once the issues were resolved, Prometheus agreed that if ABIG found the documentation satisfactory and released the LOC funds, GEMS would be paid in full; GEMS also waived its 50% payment due upon shipment of the scanner. Once the scanner finally arrived in Saudi Arabia in late November 2001, Uwaydah informed GEMS that the LOC funds had been released (implying satisfaction of the documentation and delivery requirements), and as soon as he verified the funds' receipt, he would instruct GEMS to deliver the scanner and would remit payment. However, by early December, Uwaydah had not called and ABIG's representatives confronted GEMS at its warehouse in Riyadh, produced documents showing that the funds had been released, and made "increasingly hostile

threats" demanding delivery. GEMS complied and delivered the scanner. A week later, Uwaydah repudiated the contract with GEMS, claiming GEMS "made representations to [ABIG] that they are title holder of the unit" and that GEMS breached the agreement because the contract specified that Prometheus was the "buyer" and "end user."

In September 2002, GEMS sued numerous defendants, including Prometheus and Uwaydah, individually, seeking damages from Prometheus for breach of contract and from Uwaydah personally as Prometheus's alter ego and under fraud and conversion theories. In January 2003 Uwaydah filed a voluntary bankruptcy petition in the Central District of California which stayed the proceedings against him. GEMS's counsel learned of the bankruptcy filing via the notice sent to creditors and potential creditors on or about January 27, 2003. The district court stayed proceedings in May, after it was finally given notice of the bankruptcy stay, but only after numerous discovery orders had already gone unheeded. Uwaydah and GEMS entered into a stipulation to lift the stay sometime thereafter and proceeded with the case in Ohio.

In November 2004, GEMS moved for sanctions for the third time – the first two having been denied by the district court – on the basis of delay caused by Uwaydah's unresponsiveness to discovery requests and orders and his intransigence with respect to scheduling a deposition. GEMS also moved for summary judgment. Uwaydah noticed GEMS and the court that Prometheus had gone into bankruptcy, and that all ongoing litigation involving it was automatically stayed. In January 2005, Uwaydah responded to the motions. In May, the district court ordered sanctions against Uwaydah, prohibiting him from "introducing any testimony contrary to the facts set forth by GEMS." In August, the district court entered summary judgment against Uwaydah personally as

No. 05-4163
*GEMS v. Prometheus*.

Prometheus's alter-ego and for fraud and conversion. The court awarded GEMS the balance of the price of the scanner plus interest.

## II.

## A.

We turn first to GEMS's fraud claim.[1] The elements of fraud in Ohio are: "(a) a representation . . . (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm-Cleveland, Inc*., 514 N.E.2d 709, 712 (Ohio 1987) (citation omitted). Where a claim of fraud is predicated upon a promise or representation relating to future action, the plaintiff must prove that at the time he made it, the promisor had no intention of keeping the promise. *See Tibbs v. Nat'l Home Constr. Corp.*, 369 N.E.2d 1218, 1223 (Ohio App. 1977). Ohio has made clear that neither the fact of breach, nor proof of malice or bad faith, is sufficient to infer the requisite intent. *See Canderm Pharmacal, Ltd. v. Elder Pharms., Inc*., 862 F.2d 597, 602 (6th Cir. 1988) (citation omitted).

---

[1] While normally we would address the sanctions question first, because our decision rests on the summary judgment record before the district court which was submitted prior to imposition of the sanctions, the sanctions question is moot. *See Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 403 n.2 (6th Cir. 1999) (finding as moot any issue "not necessary to resolution of [the] case.").

Here, GEMS cites the fact that Uwaydah made repeated assurances that Prometheus would pay for the scanner if GEMS shipped it to Saudi Arabia, but then immediately diverted all funds away from Prometheus right after the funds posted to the account, thus rendering Prometheus insolvent. Uwaydah contends that because GEMS breached the contract, Prometheus was relieved of its duty to pay and he was therefore free to use the funds for other purposes. However, Uwaydah's theory is incorrect on its face because it does not prove GEMS materially breached the contract, which is the only way payment thereunder would have been excused. *See Kersh v. Montgomery Developmental Ctr.*, 519 N.E.2d 665, 668 (Ohio Ct. App. 1987).

The contract obligated GEMS to deliver the scanner to ABIG in Riyadh and comply with the LOC's requirements, both of which it accomplished. Uwaydah does not prove how passage of title was essential to the purpose of the agreement in order to claim material breach. *See id.* Moreover, Uwaydah's justification is belied by the facts. GEMS delivered the scanner to ABIG in early December, which is when Uwaydah alleges GEMS breached the contract by passing title. However, Prometheus's bank records show that the LOC funds posted on November 27 and were wired to someone in Beirut, Lebanon, on November 29, which was at least a week before the alleged breach. Thus, a valid inference can be drawn that Uwaydah had no intention of paying for the scanner at any point. Such an inference, while not the strongest, nonetheless went unrebutted by Uwaydah's summary judgment submissions to the court below or in his brief to this court.

We therefore affirm summary judgment on the fraud issue against Uwaydah personally.

**B.**

No. 05-4163
*GEMS v. Prometheus*.

Because GEMS sought the same remedy we affirm herein through its claims for alter ego/breach of contract and conversion, those issues are moot. *See Mount Elliott*, 171 F.3d at 403 n.2 (finding as moot any issue "not necessary to resolution of [the] case.").

**AFFIRMED.**