[Cite as *Janson v. Christ Hosp., Inc.*, 2021-Ohio-1467.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TRACY JANSON, | : | APPEAL NO. C-200047<br>TRIAL NO. A-1505049 |
| and | : | |
| PAMELA JANSON, | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| THE CHRIST HOSPITAL, INC., | : | |
| Defendant-Appellee, | : | |
| and | : | |
| ABUBAKAR ATIQ DURRANI, M.D., et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| RYAN HENSLEY, | : | APPEAL NO. C-200048<br>TRIAL NO. A-1700316 |
| and | : | |
| LAURA HENSLEY, | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| CHRIST HOSPITAL, | : | |
| Defendant-Appellee, | : | |
| and | : | |
| ABUBAKAR ATIQ DURRANI, M.D., et al., | : | |
| Defendants. | : | |

SHANNON KOEHLER,                      :          APPEAL NO. C-200050
                                                 TRIAL NO. A-1700297
    Plaintiff-Appellant,         :

 vs.                                  :          *O P I N I O N.*

THE CHRIST HOSPITAL,                  :

    Defendant-Appellee,          :

 and                                  :

ABUBAKAR ATIQ DURRANI, M.D., et       :
al.,

    Defendants.                  :

---

CHRISTINA GOLDSTEIN,                  :          APPEAL NO. C-200052
                                                 TRIAL NO. A-1700299
    Plaintiff-Appellant,         :

 vs.                                  :          *O P I N I O N.*

CHRIST HOSPITAL,                      :

    Defendant-Appellee,          :

 and                                  :

ABUBAKAR ATIQ DURRANI, M.D., et       :
al.,

    Defendants.                  :

---

CONNIE UNDERWOOD,                     :          APPEAL NO. C-200053
                                                 TRIAL NO. A-1700312
 and                                  :

JOSPEH UNDERWOOD,                     :          *O P I N I O N.*

    Plaintiffs-Appellants,       :

 vs.                                  :

CHRIST HOSPITAL,                      :

    Defendant-Appellee,          :

2

and                                               :

ABUBAKAR ATIQ DURRANI, M.D., et    :
al.,

    Defendants.                              :

---

SUSAN SCHOCK,                           :          APPEAL NO. C-200054
                                                   TRIAL NO. A-1700291
  and                                    :

PAUL SCHOCK,                            :              *O P I N I O N.*

    Plaintiffs-Appellants,          :

  vs.                                    :

CHRIST HOSPITAL,                        :

    Defendant-Appellee,             :

  and                                    :

ABUBAKAR ATIQ DURRANI, M.D., et    :
al.,

    Defendants.                     :

---

KERRY MCNEAL,                           :          APPEAL NO. C-200055
                                                   TRIAL NO. A-1700328
  and                                    :

ANJANETTE MCNEAL,                       :              *O P I N I O N.*

    Plaintiffs-Appellants,          :

  vs.                                    :

THE CHRIST HOSPITAL,                    :

    Defendant-Appellee,             :

  and                                    :

ABUBAKAR ATIQ DURRANI, M.D., et    :
al.,

3

Defendants.                                        :

_____

KATHY JILL HERSLEY,                    :          APPEAL NO. C-200056
                                                               TRIAL NO. A-1700288
          Plaintiff-Appellant,               :

     vs.                                            :              *O P I N I O N.*

CHRIST HOSPITAL,                           :

          Defendant-Appellee,             :

       and                                           :

ABUBAKAR ATIQ DURRANI, M.D., et   :
al.,

          Defendants.                           :

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From are:  Affirmed

Date of Judgment Entry on Appeal:  April 28, 2021

*Robert A. Winter Jr., Benjamin M. Maraan II, The Deters Law Firm Co. II, P.A., James F. Maus* and *Alex Petraglia,* for Plaintiffs-Appellants.

*Dinsmore & Shohl LLP, Jennifer Orr Mitchell, Matthew S. Arend* and *R. Samuel Gilley,* for Defendant-Appellee.

**ZAYAS, Presiding Judge.**

{¶1} In this collection of appeals, consolidated for opinion purposes, appellants ask us to overturn our prior authority concerning what constitutes a medical claim, as defined in R.C. 2305.113, for the purpose of the medical-malpractice statute of repose. We find no reason to overturn our prior precedent, and we apply our recent decision in *Couch v. Durrani*, 1st Dist. Hamilton Nos. C-1906703, C-190704, C-190705, C-190706 and C-190707, 2021-Ohio-726, to resolve these comparable issues stemming from The Christ Hospital's alleged involvement in the alleged widespread malpractice committed by Dr. Abubakar Atiq Durrani. Therefore, we affirm the judgments of the trial court.

## Factual and Procedural Background

{¶2} These consolidated appeals represent eight of over hundreds of cases filed against Dr. Abubakar Atiq Durrani and the area hospitals where he performed hundreds of allegedly improper and unnecessary surgeries over the course of several years. The following facts were set forth by the appellants in their respective complaints.

{¶3} Plaintiff-appellant Tracy Janson first met with Durrani in the spring of 2008 after he experienced back pain which prevented him from standing up straight. Durrani immediately recommended surgery and performed the surgery on Janson at The Christ Hospital ("TCH") in September of 2008. Ultimately, Janson's pain only increased after the surgery. Durrani recommended Janson undergo another surgery but Janson refused. Janson brought suit against TCH, among other defendants, on September 18, 2015, alleging claims for negligence, negligent credentialing and retention, fraud, spoliation of evidence, and loss of consortium.

{¶4}   Plaintiff-appellant Ryan Hensley first met with Durrani in early 2009 after he experienced back pain which prevented him from working.   Durrani immediately recommended surgery and performed the surgery at TCH on May 4, 2009.  After the surgery, Hensley began to experience severe pain in his legs and lost a lot of his previous flexibility.  Hensley later underwent two additional surgeries by Durrani at another area hospital.  Hensley brought suit against TCH, among other defendants, on September 25, 2015, alleging claims for negligence, negligent credentialing and retention, fraud, spoliation of evidence, violation of the Ohio Consumer Sales Practices Act, products liability, and loss of consortium.

{¶5}   Plaintiff-appellant Shannon Koehler first met with Durrani in 2007 after she experienced pain in her neck and shoulders which caused numbness and tingling in her arms and hands.  Durrani told her she needed surgery; however, he was unable to immediately complete the surgery himself so another doctor within his office performed the surgery on Koehler in September of 2008.   After the first surgery, Koehler's pain returned so she again met with Durrani.  Durrani told her he would need to either repair the work of the other doctor or "re-do" the work himself. Koehler agreed to let him "re-do" the work himself and Durrani performed surgery on Koehler at TCH on July 13, 2009.  Durrani then performed two additional surgeries on Koehler at another area hospital.   Unfortunately, Koehler's pain continued to get worse, and she had to wear a neck brace and use a walker to get around.  Koehler brought suit against TCH, among other defendants, on September 15, 2015, alleging claims for negligence, negligent credentialing, supervision and retention, fraud, violation of the Ohio Consumer Sales Practices Act, products liability, and spoliation of evidence.

{¶6} Plaintiff-appellant Christina Goldstein first met with Durrani in 2008 after she experienced severe lower back pain. Durrani recommended surgery and performed surgery on Goldstein at TCH on December 3, 2008. Durrani later performed four additional surgeries on Goldstein at another area hospital. Goldstein's cervical spine is now unstable, and she is unable to turn her head due to pain and sounds of grinding bone. Goldstein brought suit against TCH, among other defendants, on September 30, 2015, alleging claims for negligence, negligent credentialing, supervision and retention, fraud, spoliation of evidence, violation of the Ohio Consumer Sales Practices Act, and products liability.

{¶7} Plaintiff-appellant Connie Underwood met with Durrani in early 2008 after she experienced pain in her neck and back. Durrani recommended surgery and performed the surgery at TCH on December 11, 2008. Durrani then performed a second surgery on Underwood at TCH on February 9, 2009. Durrani later performed a third and a fourth surgery on Underwood at another area hospital. Underwood now suffers from severe pain in her lower back and pervasive numbness that extends from her neck to her feet. Underwood brought suit against TCH, among other defendants, on September 28, 2015, alleging claims for negligence, negligent credentialing and retention, fraud, spoliation of evidence, violation of the Ohio Consumer Sales Practices Act, products liability, and loss of consortium.

{¶8} Plaintiff-appellant Susan Schock first met with Durrani in 2007 after she experienced mild back pain. Durrani recommended surgery and the surgery was performed at TCH on November 11, 2008. Schock experienced increased pain after the surgery and Durrani told her the fusion done during the surgery had broken. Durrani then performed another surgery on Schock to correct the fusion at another area hospital. Schock experienced constant and extreme pain after the surgeries, and

was ultimately told by another doctor that she would eventually need additional surgery because there is a broken screw in her back. Schock brought suit against TCH, among other defendants, on September 1, 2015, alleging claims for negligence, negligent credentialing and retention, fraud, spoliation of evidence, and loss of consortium.

{¶9} Plaintiff-appellant Kerry McNeal first met with Durrani in 2009 after he experienced pain in his neck, chest, left arm, thumb and index finger. Durrani recommended surgery and performed surgery on McNeal at TCH on April 1, 2009. McNeal continued to experience the same pain after the surgery. Durrani performed three additional surgeries on McNeal at various area hospitals. McNeal now experiences more pain than he did before the surgeries. McNeal brought suit against TCH, among other defendants, on September 28, 2015, alleging claims for negligence, negligent credentialing, supervision, and retention, fraud, violation of the Ohio Consumer Sales Practices Act, products liability, spoliation of evidence, and loss of consortium.

{¶10} Plaintiff-appellant Kathy Jill Hersley first met with Durrani in early 2006 after she experienced sharp pain in her lower back. Durrani recommended surgery and performed surgery on Hersley at TCH on February 28, 2007. Hersley continues to suffer from the same pain she did prior to surgery and now additionally suffers from pain in her hips and lower limbs. Hersley brought suit against TCH, among other defendants, on September 30, 2015, alleging claims for negligence, negligent credentialing, supervision, and retention, fraud, spoliation of evidence, and violation of the Ohio Consumer Sales Practices Act.

{¶11} In all cases, TCH moved to dismiss the plaintiffs' complaints pursuant to Civ.R. 12(B)(6), asserting, among other things, that all of plaintiffs' claims, with

the exception of the spoliation-of-evidence claims, were medical claims that were time barred by the medical-malpractice statute of repose. In addition, TCH asserted that dismissal of the time-barred claims would accordingly eliminate any basis for the spoliation-of-evidence claims. The trial court agreed with TCH and granted the motion to dismiss in each case. Plaintiffs-appellants now bring these appeals.

## Law and Analysis

{¶12} Plaintiffs-appellants, collectively, bring a sole assignment of error alleging that the trial court committed reversable error by granting TCH's motions to dismiss and dismissing appellants' negligent credentialing and fraud claims. In support of their contention, they raise four issues for review: (1) whether appellants' negligent-credentialing claims against TCH are "medical claims" under R.C. 2305.113; (2) whether the doctrines of fraud and equitable estoppel apply against R.C. 2305.113; (3) whether appellants' fraud claims are "medical claims" or independent nonmedical fraud claims; and (4) whether the trial court erred by dismissing appellants' spoliation-of-evidence claims.

{¶13} "A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint." *Makrauer v. Hal Holmes, Inc.*, 1st Dist. Hamilton No. C-190256, 2020-Ohio-945, ¶ 6, citing *Thomas v. Othman*, 1st Dist. Hamilton No. C-160827, 2017-Ohio-8849, ¶ 18. "When ruling on a Civ.R. 12(B)(6) motion, the trial court is confined to the allegations in the complaint." *Id.* "It must accept the complaint's factual allegations as true and must draw all reasonable inferences in favor of the nonmoving party." *Id.* "A complaint should not be dismissed for failure to state an actionable claim unless it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *Id.*, citing *Thomas* at ¶ 19.

{¶14} "This court reviews the granting of a Civ.R. 12(B)(6) motion de novo, and, like the trial court, we are constrained to take all of the allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Battersby v. Avatar, Inc.*, 157 Ohio App.3d 648, 2004-Ohio-3324, 813 N.E.2d 46, ¶ 5 (1st Dist.), citing *Tri-State Computer Exchange, Inc. v. Burt*, 1st Dist. Hamilton No. C-020345, 2003-Ohio-3197, ¶ 11.

{¶15} Ohio's medical-malpractice statute of repose prohibits an action upon a "medical claim" from commencing more than four years from the occurrence of the act or omission that constitutes the alleged basis of the medical claim. R.C. 2305.113(C)(1). Consequently, if a "medical claim" is not commenced within four years of the alleged act or omission which constitutes the basis of that claim, then any action upon that claim is barred. R.C. 2305.113(C)(2). The Ohio Revised Code defines a "medical claim" as:

> [A]ny claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:
>
> > (a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;

10

(b) Derivative claims for relief that arise from the plan of care prepared for a resident of a home;

(c) Claims that arise out of the medical diagnosis, care, or treatment of any person or claims that arise out of the plan of care prepared for a resident of a home and to which both types of claims either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

(d) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and that are brought under section 3721.17 of the Revised Code;

(e) Claims that arise out of the skilled nursing care or personal care services provided in a home pursuant to the plan of care, medical diagnosis, or treatment.

R.C. 2305.113(E)(3).

{¶16} In these consolidated appeals, each plaintiff-appellant brought suit against TCH more than four years from their respective surgeries performed by Durrani at TCH. Therefore, any claim against TCH that is considered to be a "medical claim" under R.C. 2305.113 would be barred by the medical-malpractice statute of repose.

11

*Negligent-Credentialing Claims*

**{¶17}** A hospital typically has several different categories of physicians practicing medicine within its facility: (1) private physicians who are granted staff privileges, which includes the right to use the facility and admit and discharge their own private patients; (2) physicians still in training; and (3) employed, full-time salaried physicians. (Citation omitted.) *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990), fn. 5, *overruled on other grounds*, 68 Ohio St.3d 435, 628 N.E.2d 46 (1994).

**{¶18}** R.C. 3701.351 provides that "the governing body of every hospital shall set standards and procedures to be applied by the hospital and its medical staff in considering and acting upon applications for staff membership or professional privileges."

**{¶19}** R.C. 2305.251(B)(1) creates a presumption that a hospital is not negligent in the credentialing of an individual who has, or has applied for, staff membership or professional privileges at the hospital pursuant to R.C. 3701.351, if the hospital can prove by a preponderance of the evidence that, at the time of the alleged negligent credentialing of an individual, the hospital was accredited by one of the following: (1) the joint commission on accreditation of healthcare organizations; (2) the American osteopathic association; (3) the national committee for quality assurance; or (4) the utilization review accreditation commission. However, that presumption may be rebutted by proof, by a preponderance of the evidence, of any of the following:

(a) The credentialing and review requirements of the accrediting organization did not apply to the hospital, * * *, the individual, or

the type of professional care that is the basis of the claim against the hospital * * *.

(b)     The hospital * * * failed to comply with all material credentialing and review requirements of the accrediting organization that applied to the individual.

(c)     The hospital * * *, through its medical staff executive committee or its governing body and sufficiently in advance to take appropriate action, knew that a previously competent individual had developed a pattern of incompetence or otherwise inappropriate behavior, either of which indicated that the individual's staff membership, professional privileges, or participating as a provider should have been limited or terminated prior to the individual's provision of professional care to the plaintiff.

(d)     The hospital * * *, through its medical staff executive committee or its governing body and sufficiently in advance to take appropriate action, knew that a previously competent individual would provide fraudulent medical treatment but failed to limit or terminate the individual's staff membership, professional privileges, or participation as a provider prior to the individual's provision of professional care to the plaintiff.

R.C. 2305.251(B)(2).

{¶20}  This court has found that negligent-credentialing claims are medical claims under R.C. 2305.113(E)(3)(c)(ii), and are therefore subject to the statute of repose. *Young v. Durrani*, 2016-Ohio-5526, 61 N.E.3d 34, ¶ 21 (1st Dist.), *appeal*

13

*not accepted*, 149 Ohio St.3d 1406, 2017-Ohio-2822, 74 N.E.3d 464; *Crissinger v. Durrani*, 2017-Ohio-9256, 106 N.E.3d 798, ¶ 17 (1st Dist.); *McNeal v. Durrani*, 2019-Ohio-5351, 138 N.E.3d 1231, ¶ 19 (1st Dist.), *rev'd on other grounds*, Slip Opinion No. 2020-Ohio-6932; *Couch*, 1st Dist. Hamilton Nos. C-190703, C-190704, C-190705, C-190706 and C-190707, 2021-Ohio-726. Most recently, in *Couch*, we addressed substantially the same argument that appellants now assert here and determined that "appellants have not presented a compelling reason to overrule our holdings in *Young*, *Crissinger*, and *McNeal*." *Couch* at ¶ 22. In our analysis, we recognized that the Ohio Supreme Court recently defined claims for negligent hiring, supervision, and retention as " 'claims[s] against an employer * * * that would not have occurred but for the employer's failure to properly hire, supervise, or retain the employee,' " and that this definition reflects the amended definition of a "medical claim" under R.C. 2305.113. *Couch* at ¶ 19, quoting *Evans v. Akron Gen. Med. Ctr.*, Slip Opinion No. 2020-Ohio-5535, ¶ 10. Therefore, although the Ohio Supreme Court did not directly determine whether a negligent-credentialing claim is a "medical claim," we concluded that *Evans* supports this finding because "it has defined related claims to reflect the amended definition of a 'medical claim.' " *Id.*

{¶21} We note that appellants asserted at oral argument that "credentialing" is not encompassed in this case within the "hiring, training, supervision, retention, or termination" language in R.C. 2305.113(E)(3)(c)(ii), because that language only applies to "employees," and not independent contractor physicians such as Durrani who (1) have independent decision-making power and (2) are "credentialed for reappointment" rather than hired. Appellants did not make this argument in their brief. The only argument made in their brief about Durrani's status as a private contractor was an attempt to distinguish a "physician" from a "caregiver" for the

14

purposes of R.C. 2305.113(E)(3)(c)(ii).[1] They never presented the argument that this subsection only applies to "employees." An issue that is raised for the first time during oral argument and not addressed in the appellate brief is waived. *Hensel v. Childress*, 2019-Ohio-3934, 145 N.E.3d 1159, ¶ 21 (1st Dist.), quoting *Andreyko v. Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, 791 N.E.2d 1025, ¶ 20 (1st Dist.). Therefore, this argument is waived.

{¶22} Finding no reason we should overturn our precedent, we reaffirm our previous decisions on this issue and determine that negligent-credentialing claims are "medical claims" under R.C. 2305.113. Appellants' negligent-credentialing claims are barred by the state of repose, since each action was commenced more than four years from the respective surgeries at TCH.

*Doctrines of Fraud and Equitable Estoppel*

{¶23} Appellants next ask us to recognize a fraud or equitable estoppel exception to the medical-malpractice statute of repose. This court has addressed this issue in *Crissinger*, 2017-Ohio-9256, 106 N.E.3d 79; *Freeman v. Durrani*, 2019-Ohio-3643, 144 N.E.3d 1067 (1st Dist.), *appeal not accepted*, 158 Ohio St.3d 1436, 2020-Ohio-877, 141 N.E.3d 250; and *Couch*, 1st Dist. Hamilton Nos., C-190703, C-190704, C-190705, C-190706 and C-190707, 2021-Ohio-726. In *Crissinger*, we recognized that the General Assembly provided fraud exceptions to other statues of repose, but not for the medical-malpractice statute of repose. *Crissinger* at ¶ 24. In *Freeman*, we recognized that "the General Assembly carved out specific exceptions within R.C. 2305.113, none of which include fraudulent conduct or equitable estoppel." *Freeman* at ¶ 11. In *Couch*, we considered the same arguments that

---

[1] This court addressed this issue in *Couch* and found that "caregiver" includes a physician. *Couch* at ¶ 21.

appellants assert here and found no reason to stray from our prior determinations. *Couch* at ¶ 25. Thus, under our duty to apply the statute as written by the General Assembly, this court has consistently declined to recognize a fraud or equitable estoppel exception to the medical-malpractice statute of repose. *Crissinger* at ¶ 24; *Freeman* at ¶ 13; *Couch* at ¶ 27.

{¶24} Appellants have brought forth no new arguments here. Therefore, we hold that there is no fraud or equitable estoppel exception to the medical-malpractice statute of repose.

*Fraud Claims*

{¶25} Relying on the Ohio Supreme Court's decision in *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709 (1987), appellants assert that their fraud claims are independent nonmedical claims rather than medical claims subject to the statute of repose. They argue their fraud claims "arise directly out of a scheme or artifice between Durrani and TCH whereby: (i) Durrani knowingly makes materially false statements to TCH's and his patients of their spine condition [sic] to induce/coerce them to undergo medically unnecessary and fraudulent surgeries, (ii) TCH is fully aware of Durrani's fraudulent business practices, acquiesces and consents to them, and does nothing to stop him, (iii) Durrani performs the medically unnecessary surgeries at TCH, (iv) TCH conceals from its patients all its knowledge that is adverse about Durrani, and (v) Durrani's and TCH's materially false statements or concealments of his condition remained ongoing and continued after the surgeries at issue."

{¶26} In *Gaines*, the plaintiff-appellant, Evelyn Gaines, went to a healthcare facility, Pretern-Cleveland, Inc., in 1980 to have her pregnancy terminated and to have her intrauterine device ("IUD") removed. *Id.* at 54. Her medical records

16

indicated that the abortion was successfully completed. *Id.* Her medical records also indicated that the IUD could not be recovered, apparently because it could not be located, even though the physician estimated its possible location. *Id.* Gaines alleged that agents or employees of Preterm negligently failed to remove the IUD as she requested and that she was told by agents or employees of Preterm that the IUD had been removed. *Id.* Gaines further alleged that she did not seek additional medical attention to remove the IUD in reliance on these misrepresentations. *Id.* Gains did not discover the IUD remained in her body until over three years later when she underwent a tubal ligation in 1983 and discovered that the IUD had perforated her uterus and become embedded in her left ligament. *Id.* Gaines filed suit in 1985 and Preterm moved for summary judgment, arguing that the action was barred by the previous version of the medical-malpractice statute of repose found in R.C. 2305.11(B). *Id.* at 54-55. The trial court granted the motion and the court of appeals affirmed, reasoning that Gaines's allegations did not state an independent cause of action in fraud because the "gist" of the allegations was medical malpractice. *Id.*

{¶27} The Ohio Supreme Court disagreed that the allegations "sounded only in malpractice." [2] *Id.* at 56. The court stated:

> A physician's knowing misrepresentation of a material fact concerning
> a patient's condition, on which the patient justifiably relies to his
> detriment, may give rise to a cause of action in fraud independent from
> an action in medical malpractice. Annotation (1973), 49 A.L.R.3d 501,

---

[2] As we noted in *Freeman*, the Ohio Supreme Court decided *Gaines* when "medical claim" was defined in R.C. 2305.11(D)(3), prior to the vast expansion of the definition by the General Assembly in R.C. 2305.113(E)(3). *Freeman*, 2019-Ohio-3643, 144 N.E.3d 1067, at ¶ 21.

506; *Leach v. Shapiro* (1984), 13 Ohio App.3d 393, 397, 13 OBR 377. 482, 469 N.E.2d 1047, 1054. The fraud action is separate and distinct from the medical malpractice action which stems from the surrounding facts where the decision to misstate the facts cannot be characterized as medical in nature. In the instant case, it cannot be said that the statement to appellant that her IUD had been removed when in fact it had not was motivated by any medical consideration. Cases may exist where the withholding of information may be medically justified, *e.g.*, where the patient's known tendency to react hysterically to bad news would interfere with vital treatment. Reasonable minds could certainly conclude that the misstatement in the instant cause was not prompted by medical concerns but by motivations unrelated and even antithetical to appellant's physical well-being.

*Id.* Thus, a fraud claim is only independent where the claim cannot be characterized as "medical in nature." *See id.*

{¶28} This court first addressed this issue in *Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, *appeal not accepted*, 138 Ohio St.3d 1435, 2014-Ohio-889, 4 N.E.3d 1051. In *Hensley*, we found that where the claims, in essence, alleged that Durrani committed fraud by recommending unnecessary surgery and by not telling the patient that the procedure he intended to use was risky and untested, and that his record as a doctor was not unblemished, the allegations went squarely to the patient's diagnosis, care, and treatment and could only be characterized as "medical in nature." *Hensley* at ¶ 19-20.

**{¶29}** We later addressed this issue in *Freeman*, 2019-Ohio-3643, 144 N.E.3d 1067, *appeal not accepted*, 158 Ohio St.3d 1436, 2020-Ohio-877, 141 N.E.3d 250. In *Freeman*, the claims alleged that Durrani, TCH and other defendants, in order to conceal information and avoid civil liability, had (1) misrepresented the results of the post-operation radiology, which reflected the failure of the surgery, and (2) informed the patient that it took time to heal, no matter the condition or the reason for the condition. *Freeman* at ¶ 20. We held that the allegations were medical in nature because they related to the patient's continued follow-up treatment. *Id.*

**{¶30}** Most recently, this court addressed this issue in *Couch*, 1st Dist. Hamilton Nos. C-190703, C-190704, C-190705, C-190706 and C-190707, 2021-Ohio-726. Speaking to the same argument that appellants now assert here, we held that the allegations were the same as those encompassed within the allegations asserted in *Freeman* and *McNeal* and thus found that the fraud claims asserted were medical claims subject to the statute of repose. *Couch* at ¶ 29-30.

**{¶31}** Appellants presented no new arguments here to persuade us to depart from this holding. Appellants' claims go squarely to the medical diagnosis, care and treatment of each respective patient and can only be characterized as medical in nature. Thus, we find that appellants' fraud claims are "medical claims" subject to the statute of repose.[3]

---

[3] We note the inclusion of fraudulent-billing claims against TCH in appellants' complaints; however, appellants have not assigned this issue as error or raised it in their briefs or oral arguments. Therefore, we must consider the argument to have been abandoned. *See* App.R. 12.

*Spoliation-of-Evidence Claims*

{¶32} This court has found that a spoliation-of-evidence claim does not arise out of the medical diagnosis, care, or treatment of a plaintiff and is therefore not a "medical claim." *Crissinger*, 2017-Ohio-9256, 106 N.E.3d 798, at ¶ 20. However, in order to prevail on a claim for interference or destruction of evidence, a plaintiff must be able to show (1) pending or probable litigation, (2) knowledge on the part of the defendant that litigation exists or is probable, (3) willful destruction of evidence by the defendant designed to disrupt the plaintiff's case, (4) *disruption of the plaintiff's case*, and (5) damages proximately caused by the defendant's acts. (Emphasis added.) *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993). In the cases at hand, all other claims brought against TCH were properly dismissed under Civ.R. 12(B)(6). Thus, plaintiffs would be unable to prove disruption of their respective cases and their spoliation-of-evidence claims would inevitably fail. Therefore, dismissal of the spoliation-of-evidence claims was proper as it appears beyond doubt from the complaint that plaintiffs could prove no set of facts entitling them to recovery on the spoliation-of-evidence claims.

*Remaining Claims*

{¶33} Appellants did not assert any argument that the trial court erred in dismissing their respective remaining claims against TCH. Errors not argued in the brief will be regarded as being abandoned. *State v. Smith*, 1st Dist. Hamilton No. C-170028, 2018-Ohio-2504, ¶ 68, citing App.R. 16(A)(1)(b), and *Loukinas v. Roto-Rooter Servs. Co.*, 167 Ohio App.3d 559, 2006-Ohio-3172, 855 N.E.2d 1272, ¶ 9 (1st Dist.); *Thomas v. Cohr, Inc.*, 197 Ohio App.3d 145, 2011-Ohio-5916, 966 N.E.2d 915, ¶ 4 (1st Dist.), citing App.R. 12(A)(2), and *Loukinas*; *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390 (1988), citing *Uncapher v. Baltimore & O.R. Co.*, 127 Ohio

St. 351, 356, 188 N.E. 553 (1933). Therefore, we must find that appellants abandoned any argument in regard to their respective remaining claims.

## Conclusion

{¶34} For the foregoing reasons, we overrule appellants' sole assignment of error and affirm the judgments of the trial court.

Judgments affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.