OPINION
{¶ 1} Relator, Tyrell L. Thompson, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate the November 27, 2007 order of its staff hearing officer declaring an overpayment of *Page 2 
temporary total disability compensation and finding that some of the compensation was fraudulently obtained, and to enter an order finding lack of jurisdiction to adjudicate the overpayment and allegation of fraud. Alternatively, relator requests the writ order the commission to vacate its finding that the compensation was fraudulently obtained.
 {¶ 2} Pursuant to Civ. R. 53 and Section (M), Loc. R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended to this opinion. In his decision, the magistrate concluded (1) neither the limitations upon the commission's continuing jurisdiction nor the doctrine of res judicata preclude the commission from adjudicating the merits of the bureau's September 18, 2007 motion for declaration of an overpayment and a finding of fraud, and (2) some evidence upon which the commission relied does not support the commission's finding that some of the compensation was fraudulently obtained. (Magistrate's Decision, ¶ 44.) Accordingly, the magistrate determined the court should issue a writ.
 {¶ 3} Respondent Industrial Commission of Ohio filed an objection to the magistrate's conclusions of law:
 The Magistrate improperly found that staff hearing officer must reiterate the district hearing officer's finding of fraud and references to various facts supporting the decision when the staff hearing officer merely modified the prior order and did not vacate the order.
 {¶ 4} Contrary to the Industrial Commission's objection, the magistrate did not indicate the staff hearing officer must reiterate the district hearing officer's findings of fact and factual references. Instead, the magistrate reviewed the evidence upon which the staff hearing officer indicated reliance and concluded none of the evidence supported a *Page 3 
finding that relator engaged in fraud for the time period at issue. Moreover, even if the magistrate implicitly suggested the conclusion to which the commission objects, any error in that respect is harmless here. The staff hearing officer substantially relies on the same evidence on which the district hearing officer relied. Neither support a finding of fraud for the time period from June 12, 2006 through December 11, 2006.
 {¶ 5} The district hearing officer relied on the transcript from the March 26, 2006 hearing, the December 11, 2006 progress note, the articles of incorporation for relator's business, and the bureau of compensation warrant dated December 5, 2006 and December 14, 2006. As the magistrate noted, the December 11, 2006 bureau progress note does not reflect fraud but instead relates that relator disclosed to the bureau that he had continued to work as a barber since the date of his injury. Moreover, the warrants are for a period of time that falls outside and subsequent to the period for which the staff hearing officer found fraudulent intent. Those warrants do not support a finding of fraud for a period of time before they were received. Finally, neither the district hearing officer nor the staff hearing officer suggests any portion of the March 26, 2006 hearing transcript which supports a finding of fraud; neither does the commission's objection.
 {¶ 6} In the final analysis, the evidence on which the commission relied to find a finding of fraud from the time period June 12 through October 3, 2006 does not support such an inference. The Industrial Commission's objection is overruled.
 {¶ 7} Following independent review pursuant to Civ. R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we *Page 4 
issue a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its staff hearing officer's order of November 27, 2007 to the extent that it finds relator fraudulently obtained compensation, and to enter an amended order that the entire overpayment is collected pursuant to the non-fraud provisions of R.C. 4123.511(K).
Objection overruled; writ granted.
BROWN and SADLER, JJ., concur. *Page 5 
 APPENDIX MAGISTRATE'S DECISION Rendered December 10, 2008 IN MANDAMUS {¶ 8} In this original action, relator, Tyrell L. Thompson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the November 27, 2007 order of its staff hearing officer ("SHO") declaring an overpayment of temporary total disability ("TTD") compensation and finding that some of *Page 6 
the compensation was fraudulently obtained, and to enter an order finding lack of jurisdiction to adjudicate the overpayment and allegation of fraud. In the alternative, relator requests that the writ order the commission to vacate its finding that the compensation was fraudulently obtained.
Findings of Fact: {¶ 9} 1. On June 6, 2006, relator sustained an industrial injury while employed part-time as a "ramp service clerk" for respondent Worldwide Flight Services, Inc. ("Worldwide"), a state-fund employer. On that date, relator injured his lower back while moving a dolly.
 {¶ 10} 2. On July 11, 2006, relator filed an application for workers' compensation benefits. On the application, Chiropractor Michael Adamets, Jr., D.C., certified that relator had sustained a lumbar sprain and was initially treated for the condition on June 12, 2006. Worldwide refused to certify the industrial claim (No. 06-842552).
 {¶ 11} 3. On August 1, 2006, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order allowing the claim for "sprain lumbar region."
 {¶ 12} 4. Worldwide administratively appealed the bureau's August 1, 2006 order.
 {¶ 13} 5. Following a September 28, 2006 hearing, a district hearing officer ("DHO") issued an order modifying the bureau's August 1, 2006 order. The DHO's order of September 28, 2006 allowed the claim for "sprain lumbar region" and additionally allowed the claim for "L5-S1 disc herniation; S1 radiculopathy." The DHO also awarded TTD compensation beginning June 12, 2006. The DHO's order cites reliance upon the reports of Dr. Adamets and other medical evidence of record. The DHO's order was mailed October 3, 2006. *Page 7 
 {¶ 14} 6. Worldwide administratively appealed the DHO's order of September 28, 2006.
 {¶ 15} 7. On October 2, 2006, relator visited Dr. Adamets at his office. In his office note of that date, Dr. Adamets reported: "He is currently employed as a barber." Dr. Adamets' October 2, 2006 office note was filed at the bureau on October 4, 2006.
 {¶ 16} 8. On a C-84 dated October 4, 2006, Dr. Adamets certified a period of TTD through an estimated return-to-work date of October 31, 2006. The C-84 form poses the following query: "Is the injured worker able to return to other employment including light duty, alternative work, modified work or transitional work?" In response, Dr. Adamets marked the "[n]o" response. The C-84 form also asks the physician to state the clinical findings that are the basis of the recommendation. In response, Dr. Adamets wrote: "See Attached," which refers to his October 2, 2006 office note.
 {¶ 17} 9. Following a November 8, 2006 hearing, an SHO issued an order that affirms the DHO's order of September 28, 2006. The SHO's order of November 8, 2006 was mailed on November 14, 2006.
 {¶ 18} 10. Earlier, on October 19, 2006, the bureau mailed to relator a letter stating:
 The Ohio Bureau of Workers' Compensation (BWC) has issued payment of your temporary total disability benefits.
 According to workers' compensation law, the Ohio Revised Code, you may continue to receive these benefits as long as medical evidence supports temporary total disability due to your work-related injury.
 Also, according to workers' compensation law, you are not entitled to temporary total benefits if: *Page 8 
 [One] You return to any type of work, including full-time, part-time, self-employment and commission work with any employer. This includes employers other than the one you worked for when you were injured.
 [Two] Your treating physician says you are ready to go back to your former job.
 [Three] Your former employer or another employer offers you a new job within your physical capabilities.
 [Four] You have reached maximum medical improvement.
 {¶ 19} 11. On December 8, 2006, a bureau claims service specialist ("CSS") wrote:
 Called the [injured worker] home and spoke to his mother. She is going to give him a message to call me. I need to verify with the [injured worker] if he is currently working as a barber as indicated in his visit to his physician. * * *
 {¶ 20} 12. On December 11, 2006, the CSS wrote:
 I received a return call from the [injured worker]. He stated to me that he is working as a barber. He stated that in fact, "he has continued to work as a barber all along cutting hair and doing management duties". He further stated that he was only disable[d] from his part time job where he was injured. I explained to him that he was not eligible for TTD Compensation if he was engaged in any form of gainful employment. He was not happy with that information but said he understood. He did express to me that he did not think it was fair that he could not get TTD Compensation just because he continued to work his regular job which had nothing to do with his part time job. * * *
 {¶ 21} 13. On December 14, 2006, the bureau issued a written referral to the commission. The referral requested:
 * * * [C]onsideration of the administrator's request that entitlement to temporary total compensation be determined.
 This recommendation is based on: *Page 9 
 C-84 application received from Dr. Adamets dated 12/4/06 requesting Temporary Total Disability Compensation benefits from 12/1/06 through 1/1/07. However, the assigned Claims Service Specialist spoke to the Injured Worker on the phone on 12/11/06. At that time, the Injured Worker stated that he had continued to perform his duties as a barber cutting hair and doing management work without interruption after his work related injury at his part-time job with Worldwide Flight Services, Inc. that occurred on 6/6/2006.
 {¶ 22} 14. Following a January 19, 2007 hearing, a DHO issued an order stating that the bureau's December 14, 2006 "motion" is denied. The DHO's order states "[T]he Injured Worker remains temporarily and totally disabled due to the allowed conditions in this claim." The DHO's order makes no mention of relator's employment as a barber.
 {¶ 23} 15. Worldwide administratively appealed the DHO's order of January 19, 2007.
 {¶ 24} 16. In February 2007, Worldwide requested that Matrix Investigations Consulting, Inc. ("Matrix"), conduct surveillance on relator regarding his operation of a barbershop. On February 23, 2007, Matrix conducted surveillance on relator's residence and his barbershop located in Reynoldsburg, Ohio.
 {¶ 25} 17. A ten-page report from Matrix was filed with the bureau on March 12, 2007.
 {¶ 26} 18. On March 26, 2007, Worldwide's administrative appeal of the DHO's order of January 19, 2007 was heard by an SHO. The March 26, 2007 hearing was recorded and transcribed for the record.
 {¶ 27} 19. Earlier, on February 8, 2007, the bureau issued an order finding an overpayment of TTD compensation beginning June 12, 2006 based upon "[i]nformation *Page 10 
received from the Injured Worker stating he has continued to work as a barber without interruption since the Date of Injury."
 {¶ 28} 20. Relator administratively appealed the bureau's order of February 8, 2007.
 {¶ 29} 21. During the March 26, 2007 hearing before the SHO, the following exchange occurred among the SHO and counsel for relator and Worldwide:
 [SHO Miller]: If there aren't any preliminary matters, then we're here on the Employer's appeal regarding the request by the Bureau to terminate temporary-total compensation.
 Mr. Soto, if you want to begin.
 [Worldwide's counsel, Mr. Soto]: Thanks, Mr. Miller.
 Mr. Miller, you're correct, we are appealing the order of the district hearing officer dated January 19th of `07. As you know, the district hearing officer found, I guess, adequate evidence to continue payment of temporary-total disability compensation. We're asking that you vacate that order in full.
 We're also asking that you declare an overpayment of all compensation paid, and I would refer you to the district hearing officer's order dated September 28th of 2006 which identifies the periods of temporary-total disability compensation related to my request for a declaration of an overpayment.
 And I guess that being said, I'll run a possible procedural issue. I know that Mr. Zamora in effect appealed a notice by the Bureau finding an overpayment subsequent to that January `07 order, and I noticed in the yellow file folder there was what appeared to be a hearing sheet for that issue. I'm not aware of that issue being noticed for hearing. It wasn't on the notice of hearing I received.
 [SHO]: Not for today. It's actually set for Wednesday of this week. *Page 11 
 [Worldwide's counsel]: I haven't even received a notice of that hearing.
 [Relator's counsel, Mr. Zamora]: I haven't received that either.
 [SHO]: That's not good. Let's see if I've got it in here real fast. They've got it set up on here for being Wednesday now. The question is, Did they send out notices? And it does not appear that they did. But I do have a worksheet and an electronic hearing folder regarding that issue; but as a matter of fact, I don't seem to have a notice.
 [Worldwide's counsel]: Would it be your position, Mr. Miller, that that issue would have to be considered in a separate hearing?
 [Relator's counsel]: My position would be that it should be because that would be a DHO and this is an SHO hearing.
 [SHO]: Well, I mean, obviously I guess I could hear it as a [DHO]. I'm not prohibited in that regard, hadn't really looked at it from that standpoint. So I guess part of it comes down to what you guys are willing to waive notice for or not.
 [Relator's counsel]: I don't think we're prepared to waive notice on that. I think we'd prefer to have that adjudicated in accordance[.]
 [SHO]: And I guess I will make note to go up and talk to the hearing administrator today and see if she can figure out what happened to your notice for that hearing; and in all likelihood, it's going to get reset since it's only two days out and there wasn't notice given to the parties.
 [Worldwide's counsel]: Right. Okay. Well, I respect Mr. Zambora's [sic] position.
 [SHO]: Sure.
 [Worldwide's counsel]: I would argue it's within your jurisdiction, but I will not make issue.
 [SHO]: I guess I'm going to decline to the extent that the issue is the request to terminate as opposed to declaring *Page 12 
overpayments, particularly if I've got to step over prior orders that awarded comp and all of that.
 [Worldwide's counsel]: I appreciate that. Thank you.
 Then I'll just proceed on the appeal of the DHO ordered [sic] dated January 19th
of `07.
 {¶ 30} 22. Following the March 26, 2007 hearing, the SHO issued an order that vacates the DHO's order of January 19, 2007 and grants the bureau's December 14, 2006 request. The SHO's order of March 26, 2007 states:
 The order of the District Hearing Officer, from the hearing dated 01/19/2007, is vacated. Therefore, the motion, filed 12/14/2006, is granted to the extent of this order.
 It is the order of the Staff Hearing Officer that temporary total compensation is terminated effective 12/11/2006 based on the finding that the claimant was working and is therefore, ineligible for the receipt of temporary total compensation. The Staff Hearing Officer finds that the claimant was working, at least as of that date, performing activities as documented in the 12/11/2006 Bureau of Workers' Compensation claims examiner note and later confirmed in the surveillance video and transcript and as testified to by the claimant that he was spending 35 to 45 hours per week operating his barbershop business. Claimant was engaged in activities to run his business including cutting and styling hair, cleaning up the shop and supervising and training other stylists in the proper methods of the operation. Therefore, the Staff Hearing Officer finds that the claimant is no longer entitled to temporary total compensation as of 12/11/2006 as he is found to be engaged in sustained remunerative employment activity such that temporary total compensation is not properly payable.
 This order is based on the 12/11/2006 Bureau of Workers' Compensation claims examiner note, the surveillance video and transcript and the claimant's testimony at hearing. Therefore, any temporary total compensation paid after 12/11/2006 is found to be overpaid and is ordered recouped pursuant to the non-fraud provisions of Ohio Revised Code section 4123.511(J). *Page 13 
 {¶ 31} 23. On April 10, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of March 26, 2007.
 {¶ 32} 24. On August 23, 2007, a DHO heard relator's administrative appeal from the bureau's order of February 8, 2007. The DHO issued an order finding an overpayment. The DHO also found that "a finding of fraud it not appropriate in this claim, at this time."
 {¶ 33} 25. The bureau and Worldwide administratively appealed the DHO's order of August 23, 2007.
 {¶ 34} 26. Following an October 12, 2007 hearing, an SHO issued an order vacating the DHO's order of August 23, 2007. The SHO's order of October 12, 2007 held that the bureau lacked jurisdiction to issue its order of February 8, 2007. The SHO's order of October 12, 2007 explains:
 * * * [T]he Bureau of Workers' Compensation order dated 02/08/2007 failed to request/continuing jurisdiction prior to issuing this order. The Industrial Commission had previously issued orders on 11/08/2006 and 03/26/2007 by two (2) Staff Hearing Officer's [sic] regarding the payment of temporary total compensation over these same periods. The Bureau of Workers' Compensation failed to request the Industrial Commission to exercise continuing jurisdiction in order to re-litigate the claimant's entitlement to temporary total compensation from 06/12/2006 prior to issuing its order. Therefore, the Bureau of Workers' Compensation did not have jurisdiction absent a request for exercise of continuing jurisdiction to re-adjudicate temporary total compensation paid from 06/12/2006. Therefore, the 02/08/2007 Bureau of Workers' Compensation order and the 08/23/2007 District Hearing Officer order are vacated for lack of jurisdiction.
(Emphasis sic.) *Page 14 
 {¶ 35} 27. On November 2, 2007, another SHO mailed an order refusing Worldwide's administrative appeal from the SHO's order of October 12, 2007.
 {¶ 36} 28. Earlier, on September 11, 2007, the bureau's Logan Special Investigations Unit ("SIU") issued a report summarizing information from the Matrix report and the transcript of March 26, 2007. The report concluded that relator had been overpaid TTD compensation beginning June 12 through December 10, 2006, and that compensation had been fraudulently obtained. The bureau's SIU report states in part:
 On March 26, 2007, THOMPSON attended a hearing at the Industrial Commission in front of Staff Hearing Officer Alan Miller. At that time, THOMPSON admitted under oath that he worked part-time as a barber while also being employed at Worldwide Flight Services as a service ramp clerk. THOMPSON advised that after he suffered a work related injury on 6/6/2006, with Worldwide Flight he continued to perform duties as a barber. THOMPSON further stated that in May 2006 he opened his own barber shop by the name T. Lashon at 1768 Brice Rd., Columbus, Ohio. THOMPSON testified he was the sole owner of this business and hired a couple of additional barbers who were self employed, but rented a chair at his location. THOMPSON stated he spent between 35 and 45 hours per week at his barber shop conducting various barber/owner duties such as cutting hair, cleaning and overseeing the operation of the business. Additionally, THOMPSON admitted to reading the warning language on the back of the BWC warrants and understanding he was not allowed to work while receiving temporary total compensation from the BWC.
 {¶ 37} 29. On September 18, 2007, the bureau moved for a declaration of an overpayment from June 12 to December 10, 2006 "based on new and changed circumstances." The bureau also moved for a finding that the compensation was fraudulently obtained. *Page 15 
 {¶ 38} 30. Following an October 12, 2007 hearing, a DHO issued an order finding an overpayment for the closed period from June 12 through December 10, 2006, and also finding that the compensation was fraudulently obtained. The DHO ordered the entire overpayment to be recouped pursuant to the "fraud provisions of R.C. 4123.511(K)."
 {¶ 39} 31. Relator administratively appealed the DHO's order of October 12, 2007.
 {¶ 40} 32. Following a November 27, 2007 hearing, an SHO issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 10/12/2007, is modified to the following extent.
 The Staff Hearing Officer first finds that grounds exist under R.C. 4123.52 for an exercise of continuing jurisdiction in order to vacate prior awards of temporary total compensation awarded in the claim. Specifically, the Staff Hearing Officer finds that there is both a demonstration of fraud on the injured worker's part, which is addressed more fully below, as well as new and changed circumstances related to the Bureau of Workers' Compensation progress noted [sic] dated 12/11/2006, which for the first time revealed the nature and extent of the injured worker's work activity as a barber during a time period for which he received temporary total compensation.
 The Staff Hearing Officer declares an overpayment of temporary total compensation for the closed period requested by the Bureau's 09/18/2007 C-86 motion, the period from 06/12/2006 through 12/11/2006, the date such compensation had previously been terminated per Staff Hearing Officer order dated 03/26/2007. The Staff Hearing Officer finds that during the closed period, the injured worker was involved in work activity as a barber operating his own business and generating income for that business, while also receiving temporary total compensation under the claim.
 The Staff Hearing Officer further finds that the injured worker received temporary total compensation for the period from 06/12/2006 through 10/03/2006 as a result of fraudulent *Page 16 
activity on his part, as defined in Policy Memo S2 of the Industrial Commission Hearing Officer Manual.
 As such, the overpayment of temporary total compensation for the period from 06/12/2006 through 10/03/2006 is to be collected pursuant to the fraud provisions of R.C. 4123.511(K).
 However, the Staff Hearing Officer finds that with regard to the overpayment of temporary total compensation for the period from 10/04/2006 through 12/11/2006, there is insufficient evidence to support a finding of fraud on the injured worker's part relating to his receipt of temporary total compensation. Accordingly, the overpayment of temporary total compensation for the period from 10/04/2006 through 12/11/2006 is to be collected pursuant to the non-fraud provisions of R.C. 4123.511(K).
 In finding the injured worker was working while receiving temporary total compensation for the period from 06/12/2006 through 12/11/2006, the Staff Hearing Officer relies on the investigation report included with the Administrator's motion, the 12/11/2006 Bureau of Workers' Compensation progress note, and the transcript of the Staff Hearing Officer hearing dated 03/26/2007. The injured worker, who is the owner of his own barber shop, testified at the 03/26/2007 hearing/that during the time in question he was spending approximately 35 to 40 hours per week at his shop operating the business, involved in cutting and styling hair, cleaning the shop, and training and supervising other barbers. The Staff Hearing Officer finds that the nature and extent of the injured worker's activities over the time period in question constitute his direct involvement in the generation of income for his business and preclude his entitlement to temporary total compensation over the period at issue. The Staff Hearing Officer rejects the injured worker's contention that his activities at his barber shop from 06/12/2006 through 12/11/2006 were minimal and geared solely to the protection of his business as an investment, as discussed in the Ohio Supreme Court decisions in State ex rel. American Standard v. Boehler, 99 Ohio St.3d 39, 2003-Ohio-2457 and State ex rel. Ford Motor Co. v. Indus. Comm., 98 Ohio St.3d 20, 2002-Ohio-7038. In contrast, the Staff Hearing Officer finds that the injured worker's activities over the period in question were more similar to the work activities discussed in State ex *Page 17 rel. Rollins v. Indus. Comm., 105 Ohio St.3d 319, 2005-Ohio-1827 and State ex rel. Meade v. Indus. Comm. 2005-Ohio-6206 (Tenth District Court of Appeals) in that the work activities were directly involved in the generation of income and thereby rendered an award of temporary total compensation inappropriate. Therefore, the Staff Hearing Officer declares an overpayment of temporary total compensation for the period from 06/12/2006 through 12/11/2006.
 The Staff Hearing Officer finds that with regard to the period of temporary total compensation awarded from 06/12/2006 through 10/03/2006, the award resulted from fraudulent activity on the part of the injured worker. Specifically, the Staff Hearing Officer finds that the six elements of fraud, as set forth in the above-cited Hearing Officer Manual policy, have been demonstrated by reliable, probative, and substantial evidence. The Staff Hearing Officer finds that the injured worker concealed from the Bureau of Workers' Compensation the fact that he was working in his own barber shop, that the concealed fact was material to the transaction at hand (the award of temporary total compensation) that the concealment was accomplished with knowledge of the underlying falsity and with the intent to mislead another into reliance, with the Bureau justifiably relying on the concealment in awarding temporary total compensation and with resulting injury, in that the Bureau awarded temporary total compensation to an individual not entitled to it.
 In making the finding of fraud, the Staff Hearing Officer relies on the 12/11/2006 Bureau progress note, the testimony of the injured worker set forth in the transcript resulting from the 03/26/2007 hearing, and the documentation included in the Bureau's investigation report.
 Accordingly, the Staff Hearing Officer finds that the overpayment of temporary total compensation for the period from 06/12/2006 through 10/03/2006 is to be collected pursuant to the fraud provisions of R.C. 4123.511(K).
 The Staff Hearing Officer further finds, however, that for the period of overpayment of temporary total compensation from 10/04/2006 through 12/11/2006, the Bureau has not met the burden of demonstrating fraud on the injured worker's *Page 18 
part with regard to receipt of benefits over this period. Specifically, the Staff Hearing Officer finds that there is a lack of evidence that the injured worker intended to misrepresent or conceal his work activities as a barber shop owner from 10/04/2006 through 12/11/2006. The Staff Hearing Officer relies on the 10/02/2006 office note from Dr. Adamets, which was filed on 10/04/2006 and which indicates that the injured worker reported to Dr. Adamets that he was "currently employed as a barber." With the filing of this office note on 10/04/2006, the Bureau was on notice that the injured worker was reporting work activity at the same time he was receiving temporary total compensation; as such, Staff Hearing Officer finds that an intent to misrepresent or conceal his work activity cannot be deemed to exist as of the date of the filing of the note. Accordingly, the Staff Hearing Officer finds that the overpayment of temporary total compensation for the period from 10/04/2006 through 12/11/2006 is to be collected pursuant to the non-fraud provisions of R.C. 4123.511(K).
 At hearing, the injured worker also contended that based on the [State ex rel. Russell v. Indus. Comm. (1998), 82 Ohio St.3d 516] decision, it was improper for the Staff Hearing Officer order of 03/26/2007 to retroactively terminate temporary total compensation effective 12/11/2006; the injured worker further contended that it was unfair for the Bureau to have a second opportunity to pursue findings of overpayment and fraud by means of its 09/18/2007 motion. The Staff Hearing Officer rejects both contentions.
 First, the Staff Hearing Officer finds that the injured worker's appeal of the 03/26/2007 Staff Hearing Officer order was refused by order issued 04/10/2007. In any event, the Staff Hearing Officer finds that the Russell decision was not applicable to the termination of temporary total compensation rendered by the 03/26/2007 order for the reason that the issue of maximum medical improvement was not involved. The issue presented to the Staff Hearing Officer at his 03/26/2007 hearing was the injured worker's entitlement to temporary total compensation in light of the evidence revealed by the 12/11/2006 Bureau progress note regarding the injured worker's work activities as a barber. Under such circumstances, a retroactive termination of temporary total compensation was proper. *Page 19 
 Second, the Staff Hearing Officer finds that the Bureau's C-86 motion of 09/18/2007 is the first attempt by the Bureau to seek declarations of overpayment and fraud regarding the injured worker's receipt of temporary total compensation for the period from 06/12/2006 through 12/11/2006. The only issue before the Staff Hearing Officer at the 03/26/2007 hearing was the injured worker's entitlement to and termination of temporary total compensation, based on the Bureau referral letter dated 12/14/2006.
 For the reasons set forth above, the Staff Hearing Officer finds an overpayment of temporary total compensation for the period from 06/12/2006 through 12/11/2006 and further finds that the injured worker's receipt of temporary total compensation for a portion of the specified period, from 06/12/2006 through 10/03/2006, resulted from fraudulent activity on his part. The Staff Hearing Officer finds no fraud involved with the injured worker's receipt of temporary total compensation for the period from 10/04/2006 through 12/11/2006.
 {¶ 41} 33. On December 19, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of November 27, 2007.
 {¶ 42} 34. On May 5, 2008, relator, Tyrell L. Thompson, filed this mandamus action.
Conclusions of Law: {¶ 43} Two issues are presented: (1) whether the limitations upon the commission's continuing jurisdiction or the doctrine of res judicata precluded the commission from adjudicating the merits of the bureau's September 18, 2007 motion for an overpayment declaration and a finding of fraud; and (2) if the answer to the first issue is in the negative, is the commission's finding that some of the compensation was fraudulently obtained supported by some evidence upon which the commission can rely? *Page 20 
 {¶ 44} The magistrate finds: (1) neither the limitations upon the commission's continuing jurisdiction nor the doctrine of res judicata precluded the commission from adjudicating the merits of the bureau's September 18, 2007 motion for an overpayment declaration and a finding of fraud; and (2) the commission's finding that some of the compensation was fraudulently obtained is not supported by some evidence upon which the commission relied.
 {¶ 45} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 46} Turning to the first issue, the doctrine of res judicata operates to preclude the re-litigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction. State ex rel. B.O.C. Group,General Motors Corp. v. Indus. Comm. (1991), 58 Ohio St.3d 199, 200. The principle applies to administrative proceedings. Id. The doctrine of res judicata, as applied to administrative proceedings before the commission, is limited by the commission's continuing jurisdiction. Id.
 {¶ 47} A prior adjudication serves to settle all issues between the parties that could have been raised and decided along with those that were decided. DiPaolo v. DeVictor (1988), 51 Ohio App.3d 166, 171.
 {¶ 48} The commission's continuing jurisdiction under R.C. 4123.52 is not unlimited. Its prerequisites are: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; or (5) error by an inferior tribunal. State ex rel. Nicholls v. Indus.Comm. (1998), 81 Ohio St.3d 454. *Page 21 
 {¶ 49} The Nicholls court suggests that new and changed circumstances also encompasses the rule regarding previously undiscoverable evidence. See, also, State ex rel. Keith v. Indus. Comm. (1991),62 Ohio St.3d 139.
 {¶ 50} The due process rights conferred by the United States and Ohio Constitutions must be recognized and upheld during administrative proceedings such as those before the commission. State ex rel. Finley v.Dusty Drilling Co., Inc. (1981), 2 Ohio App.3d 323. As applied to proceedings before the commission, "[p]rocedural due process includes the right to a reasonable notice of hearing as well as a reasonable opportunity to be heard." Id. at 324-325. "Furthermore, the right to a reasonable opportunity to be heard includes reasonable notice of the time, date, location and subject matter of the hearing." State ex rel.LTV Steel Co. v. Indus. Comm. (1995), 102 Ohio App.3d 100, 103-104. Without reasonable notice of the hearing's subject matter, a party's right to appear and present well-supported and developed arguments endorsing his position is compromised.
 {¶ 51} Analysis begins with the exchange recorded at the March 26, 2007 hearing before the SHO.
 {¶ 52} As previously noted, on December 14, 2006, the bureau issued to the commission a written referral requesting "that entitlement to temporary total compensation be determined." The bureau's December 14, 2006 referral was prompted by relator's December 11, 2006 admission to a bureau CSS that he had continued to work as a barber after his industrial injury.
 {¶ 53} The bureau's December 14, 2006 referral was initially adjudicated by a DHO following a January 19, 2007 hearing. The March 26, 2007 hearing before an SHO *Page 22 
was held on Worldwide's administrative appeal from the DHO's order of January 19, 2007.
 {¶ 54} At the March 26, 2007 hearing, Worldwide asked the SHO to declare an overpayment of all TTD compensation paid in the claim.
 {¶ 55} In response to Worldwide's request that the subject matter of the March 26, 2007 hearing include the overpayment issue as well as termination of compensation, relator's counsel took the position that the overpayment issue must be adjudicated in another administrative proceeding. Then, relator's counsel stated on the record that relator was not "prepared to waive notice on that." Thereafter, the SHO indicated that the issue before him at the hearing "is the request to terminate as opposed to declaring overpayments."
 {¶ 56} In effect, counsel refused to waive relator's due process right to reasonable notice that the subject matter of the March 26, 2007 hearing include the issue of overpayment as well as termination of compensation. Given relator's refusal to waive notice, the hearing went forward solely on the issue of whether the TTD compensation should be terminated. In fact, the SHO's order of March 26, 2007 determined that TTD compensation be terminated as of December 11, 2006. The SHO's order, in keeping with relator's refusal to waive notice of expanded issues, did not adjudicate the overpayment issue.
 {¶ 57} Given that the March 26, 2007 SHO's order did not adjudicate any other issues related to relator's employment as a barber other than the termination of compensation, the doctrine of res judicata cannot preclude a subsequent administrative adjudication of those issues, i.e., overpayment and fraud. *Page 23 
 {¶ 58} In the SHO's order of March 26, 2007, the commission was indeed exercising its continuing jurisdiction over its prior award of TTD compensation adjudicated by the SHO's order of November 8, 2006 that affirmed the DHO's order of September 28, 2006. It can be said that the basis for the exercise of continuing jurisdiction to terminate TTD compensation effective December 11, 2006 was the discovery of new evidence, i.e., that relator had continued to be employed as a barber following his industrial injury. The discovery of new evidence can be viewed as new and changed circumstances. See Keith.
 {¶ 59} While the SHO's order of March 26, 2007 exercises continuing jurisdiction over the prior award of TTD compensation, the SHO's order of March 26, 2007 did not exercise continuing jurisdiction over all the issues raised by the discovery that relator was working and the investigations that followed the bureau's December 11, 2006 discovery.
 {¶ 60} Given the above analysis, it was not inappropriate for the bureau's September 18, 2007 motion to assert "new and changed circumstances" in requesting an overpayment declaration and a finding of fraud. Nor was it inappropriate for the SHO in his order of November 27, 2007 to find that he had continuing jurisdiction to adjudicate the bureau's motion based upon new and changed circumstances.
 {¶ 61} Here, relator complains that some of the evidence relied upon by the SHO's order of November 27, 2007 was already in evidence at the March 26, 2007 SHO's hearing. In fact, the SHO's order of November 27, 2007 adjudicating an overpayment and fraud specifically relies upon the transcript of the March 26, 2007 hearing. Relator seems to suggest that there cannot be a proper exercise of continuing jurisdiction at the November 27, 2007 hearing based upon "new and changed circumstances" when the *Page 24 
SHO's order of November 27, 2007 relies upon evidence previously considered at the March 26, 2007 hearing. Relator's suggestion is incorrect.
 {¶ 62} Again, the SHO who issued his order of March 26, 2007 was limited as to the issues he could adjudicate because relator refused to waive notice of the subject matter of the hearing. Given the limited scope of the subject matter before the SHO on March 26, 2007, as agreed to by the parties and the SHO, the commission was not precluded from subsequently adjudicating the subject matter that it could not address on March 26, 2007. Nor was the commission precluded from considering evidence previously considered on March 26, 2007.
 {¶ 63} Accordingly, the magistrate concludes that neither the limitations upon the commission's continuing jurisdiction nor the doctrine of res judicata precluded the commission from adjudicating the merits of the bureau's September 18, 2007 motion for an overpayment declaration and a finding of fraud.
 {¶ 64} Turning to the second issue, the elements of fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Gaines v.Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55.
 {¶ 65} It is well settled through caselaw that any remunerative activity outside the former position of employment precludes TTD compensation. State ex rel. Ford Motor Co. v. Indus. Comm.,98 Ohio St.3d 20, 2002-Ohio-7038, at ¶ 18-19. *Page 25 
 {¶ 66} While the SHO's order of November 27, 2007 indicates that, administratively, relator seriously challenged the claim that his activities related to his barbershop barred TTD compensation, relator does not challenge that claim here. However, relator does challenge the commission's determination that he fraudulently obtained the compensation.
 {¶ 67} The SHO correctly noted that a finding of fraud requires proof that relator had the intent to mislead the bureau into believing that he was not working.
 {¶ 68} Based upon relator's October 2, 2006 disclosure to Dr. Adamets that he was currently employed as a barber, which was reflected in Dr. Adamets office note filed with the bureau on October 4, 2006, the SHO determined that intent was lacking as of October 4, 2006 onward. Based on that premise, the SHO found no fraud in the receipt of compensation from October 4 to December 11, 2006.
 {¶ 69} However, the SHO somehow inferred a fraudulent intent for the period prior to October 4, 2006. The SHO then listed the evidence he relied upon:
 In making the finding of fraud, the Staff Hearing Officer relies on the 12/11/2006 Bureau progress note, the testimony of the injured worker set forth in the transcript resulting from the 03/26/2007 hearing, and the documentation included in the Bureau's investigation report.
 {¶ 70} None of the evidence specifically relied upon by the SHO provides support for a fraudulent intent for the period June 12 through October 3, 2006.
 {¶ 71} To the contrary, the December 11, 2006 bureau "progress note" indicates that relator disclosed to the bureau's CSS during a telephone call that he had continued to work as a barber since the date of injury. *Page 26 
 {¶ 72} Moreover, the SHO's order fails to identify anything in the March 26, 2007 transcript or the bureau's investigative report to support a fraudulent intent.
 {¶ 73} The commission, like any other fact finder in any administrative, civil or criminal proceeding, may draw reasonable inferences and rely upon his or her own common sense in evaluating evidence. State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.,98 Ohio St.3d 134, 2002-Ohio-7089, at ¶ 69.
 {¶ 74} Clearly, relator's October 2, 2006 disclosure to Dr. Adamets that he was currently employed as a barber and his December 11, 2006 disclosure to the bureau's CSS that he had been working as a barber all along provide no reasonable inference that relator had a fraudulent intent prior to October 4, 2006 as the hearing officer found.
 {¶ 75} The SHO's order of November 27, 2007 states that the DHO's order of October 12, 2007 is "modified." The SHO's order of October 12, 2007 finds fraud for the entire period — from June 12 through December 10, 2006.
 {¶ 76} Unlike the SHO's order, the DHO's order relies heavily on the fact that relator cashed warrants containing a warning regarding the receipt of compensation. The record contains copies of just two warrants, one dated December 5 and the other dated December 14, 2006. The warning on the backside of the two warrants contained in the record is illegible. However, in the bureau's SIU report, the warning is set forth as follows:
 WARNING-If this warrant is to compensate you for permanent total disability, temporary total disability, and living maintenance or wage loss not working benefits, you are not entitled to it if you are working[.] Therefore, you should return this warrant to the BWC immediately or risk criminal felony prosecution[.] * * * *Page 27 
 {¶ 77} The magistrate recognizes that the record contains the bureau letter to relator mailed October 19, 2006 that warns that a claimant is not entitled to TTD benefits if:
 * * * You return to any type of work, including full-time, part-time, self-employment and commission work with any employer. This includes employers other than the one you worked for when you were injured.
 {¶ 78} Neither the DHO's order of October 12, 2007 nor the SHO's order of November 27, 2007 states reliance upon the bureau's October 19, 2006 letter as evidence of fraudulent intent. The magistrate notes parenthetically that the letter was mailed 17 days after relator disclosed to Dr. Adamets that he was currently working.
 {¶ 79} In the magistrate's view, that relator endorsed and cashed the two warrants dated December 5 and December 14, 2006 cannot be some evidence of fraudulent intent when the dates of the warrants fall outside the period that the SHO found fraudulent intent, i.e., from June 12 to October 4, 2006.
 {¶ 80} Based upon the above analysis, the magistrate finds that the commission's finding of fraud is not supported by the evidence relied upon in the commission's orders.
 {¶ 81} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of November 27, 2007 to the extent that it finds that relator fraudulently obtained compensation, and to enter an amended order that the entire overpayment is to be collected pursuant to the nonfraud provisions of R.C. 4123.511(K). *Page 1