DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant dB Sales II, Inc. ("dB") appeals from a judgment of the Summit County Court of Common Pleas that granted judgment on a cognovit note to appellee Sigma Sales Company ("Sigma"). We affirm.
This action arises from a $99,000 cognovit promissory note that was signed in 1988 by dB as part of a business buy-out agreement between dB and appellee Sigma. During the early 1980s, Herbert Spokane through his corporation Sigma entered into a business arrangement with Bruce Finn through Finn's corporation, BDD. Each man's corporation was a fifty percent shareholder of dB, a company that sold audio equipment as a manufacturer's representative. The specific details of the business arrangement are relevant only insofar as Spokane's Sigma was employed as a consulting firm by dB, and one of the primary goals of this arrangement was the avoidance of income tax liability for both Finn and Spokane. Over the years that Finn and Spokane were in business together, in their effort to avoid income taxes, each man funneled well over $100,000 in personal expenses through the business.
In 1986 or 1987, dB lost its most lucrative account. Spokane and Finn, consequently, decided to dissolve their business relationship. As part of the dissolution, dB agreed to pay Sigma $99,000. On February 25, 1987, dB executed a cognovit note for $99,000, with monthly payments of $2,062.50 to commence January 25, 1988.
dB defaulted on the note in May of 1988, at which time a balance of $93,410.62 was still due. According to Finn's later testimony, he had discovered that Sigma had a significant amount of debts arising from personal expenses that Spokane had charged to the company. Finn, who contended that he had no prior knowledge that Spokane had been charging personal expenses to his company, believed that dB had been fraudulently induced to execute the cognovit note.
On September 15, 1995, Sigma brought this action against dB, attempting to collect the balance due on the note plus interest from May 1988. dB answered, raising numerous defenses including fraud. dB also filed a fraud counterclaim against Sigma and a third-party fraud claim against Spokane. The fraud defense and claims were based on allegations that Spokane had made false representations that dB owed Sigma a large sum of money and that Sigma and Spokane had no outstanding debts to dB. dB alleged that it had relied on these false representations when it executed the $99,000 note.
Sigma moved for summary judgment on all claims. The trial court granted Sigma and Spokane summary judgment on dB's fraud claims, concluding that these claims were barred by the statute of limitations. The case proceeded to trial on Sigma's claim on the cognovit note.
Following a bench trial, the trial court found that dB had failed to prove any defense to Sigma's claim on the note. The trial court, therefore, ordered that dB pay Sigma $200,232.81 plus ten percent interest from May 4, 1996. dB appeals and assigns the following four errors for our review:
 I. THE TRIAL COURT ERRED IN ITS CONSTRUCTION OF THE CONSULTING AGREEMENT PROVISION PROVIDING FOR REIMBURSING EXPENSES BY CONSTRUING THAT PROVISION AS INCLUDING REIMBURSEMENT OF PERSONAL LIVING EXPENSES FOR THE OWNER OF THE CONSULTING CORPORATION.
 II. THE TRIAL COURT ERRED IN FAILING TO MAKE FINDINGS OF FACT ADDRESSED TO THE ELEMENTS OF THE DEFENDANT'S CLAIM FOR FRAUDULENT MISREPRESENTATION AND TO THE EXTENT SUCH FINDINGS WERE MADE, THEY ARE NOT IN ACCORD WITH THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED IN HOLDING THAT THE DEFENDANT HAD THE BURDEN OF PROVING ITS FRAUDULENT INDUCEMENT CLAIM BY "CLEAR AND CONVINCING" EVIDENCE, RATHER THAN A PREPONDERANCE OF THE EVIDENCE.
 IV. THE TRIAL COURT ERRED IN NOT HOLDING THAT PLAINTIFF'S FAILURE TO ANSWER THE DEFENDANT'S REQUESTS FOR ADMISSION CONCLUSIVELY ESTABLISHED THE MATTERS ADDRESSED BY SUCH REQUEST.
We will address the assigned errors in reverse order for ease of discussion.
The fourth assignment of error is that the trial court erred by failing to hold that Sigma's failure to respond to dB's requests for admissions served to conclusively establish the matters asserted therein. It is fundamental that an appellant must demonstrate error on the record. See Pennant Moldings, Inc.v. C J Trucking Co. (1983), 11 Ohio App.3d 248, 251. Although the record includes a notice from dB that it had served Sigma with requests for admissions, dB did not file a copy of the requests with the trial court. dB contends that, at trial, it argued that the trial court should deem the matters asserted in the requests as conclusively established pursuant to Civ.R. 36. dB fails to indicate, however, where in the record such a discussion is reflected. See App.R. 16(A)(3). Moreover, our search of the record reveals that dB never made the requests part of the record. Although dB argues that it introduced the requests as Defendant's Exhibit 57, the record fails to reveal any such exhibit. Because dB has failed to demonstrate any error on the record, its fourth assignment of error is overruled.
The third assignment of error is that the trial court erroneously applied a "clear and convincing evidence" standard to dB's claim for fraudulent inducement. The parties do not dispute that the appropriate standard is set forth in Household FinanceCorp. v. Altenberg (1966), 5 Ohio St.2d 190, syllabus, which provides:
 "In an action for equitable relief based on fraud, such as to set aside or reform a written document, clear and convincing evidence of the fraud is required, but, in an ordinary action at law for money only based on fraud, a preponderance of the evidence is sufficient to prove such fraud."
The only dispute is whether there was a claim or defense at issue here, and, therefore, which portion of the syllabus applied to this case. dB contends that the trial court should have applied a preponderance standard to its fraudulent inducement claim. What the company overlooks, however, is the fact that the court had already granted Sigma and Spokane summary judgment on dB's fraud claims because they were barred by the statute of limitations. dB had no fraud claim pending before the court. It was only its defense of fraudulent inducement that remained viable. Because dB sought to set aside a written instrument based on the defense of fraud, it was required to produce clear and convincing evidence of fraud. Id. The third assignment of error is overruled.
The second assignment of error is that the trial court failed to make sufficient findings on his fraud claim and that the court's conclusion that it failed to prove fraud was against the manifest weight of the evidence. Again, because only the fraud defense, not the fraud claim, remained viable at the time of trial, our review is limited to whether the trial court properly concluded that dB failed to establish fraud as a defense to Sigma's claim on the cognovit note.
To establish a defense of fraud, dB was required to establish the following elements:
 "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55.
Because dB failed to establish the element of justifiable reliance, we will confine our discussion to that element.
The gist of dB's fraud defense was that it had relied on Spokane's explicit representation that he owed no money to dB but that dB owed him or Sigma a significant amount of money. At issue is Spokane's implicit representation, or his failure to disclose information to the contrary, that he had not charged thousands of dollars in personal expenses to the business. Spokane's position was that he had not defrauded Finn or dB because Finn knew exactly what he had done.
Although Spokane admitted at trial that he had charged thousands of dollars in personal expenses to his business, he maintained that Finn was well aware of the practice and that Finn himself had charged personal expenses such as ski trips and other vacations. In fact, according to Spokane, from the very beginning of their business relationship, he and Finn orally agreed that, in order to reduce their income tax liability, each man would charge many of his personal expenses to the business. Each eventually funneled over $100,000 in personal expenses through the business. Spokane testified that, during their years in business together, he and Finn openly discussed this practice and that each had seen the other's expense reports that included personal expenses. Although Finn testified that he knew nothing about Spokane's practice of charging personal expenses to the business until after he signed the note, the trial court explicitly found Spokane's testimony "to be more credible on all issues than the testimony of Mr. Finn." It was for the trial court as fact finder to determine which witness was more credible. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Even if Finn did not have knowledge of the full extent to which Spokane had charged personal expenses to the business, he should have investigated further. Where one has been put on notice that material representations may be false or that information material to the transaction may not have been disclosed, he cannot justifiably rely on the representation or omission unless he has conducted a reasonable investigation. SeeFoust v. Valleybrook Realty Co. (1981), 4 Ohio App.3d 164, 165. The trial court had evidence before it that Finn had notice of Spokane's practice of charging personal expenses to the business. Finn could not justifiably rely on any contrary representation or failure to disclose unless he conducted a reasonable investigation. Finn made no effort to do so. Spokane testified that he kept Sigma's business records at dB's offices and that Finn had full access to them. It was not disputed, however, that Finn did not examine the financial records of Sigma before he signed the $99,000 note.
Given the evidence before it, the trial court could reasonably conclude that dB failed to prove, by clear and convincing evidence, that it justifiably relied on Spokane's material misrepresentation or failure to disclose information. The trial court's failure to accept dB's fraud defense, therefore, was not against the manifest weight of the evidence. The second assignment of error is overruled.
The first assignment of error is that the trial court erred in concluding that the terms of the written consulting agreement between dB and Sigma provided for the payment of Spokane's personal expenses as well as his business expenses. Even if the trial court erred in this regard, however, dB has failed to demonstrate reversible error. As we indicated in our discussion of the second assignment of error, dB failed to prove that it justifiably relied on any misrepresentation or failure to disclose information by Spokane or Sigma. Finn knew that Spokane was charging great amounts of personal expenses to the business and had even orally agreed with him that he could do so. Whether the practice was authorized by the consulting agreement was of no import. Even if the trial court had found that the written agreement did not provide for the payment of personal expenses, therefore, the outcome of the trial would have been the same. The first assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ JOHN R. MILLIGAN, FOR THE COURT
SLABY, P. J.
BAIRD, J., CONCUR
(Milligan, J., retired Judge of the Fifth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)