[Cite as *Bealer v. Randall Mtge. Servs., Inc.*, 2011-Ohio-1394.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

JAMES C. BEALER                          :

    Plaintiff-Appellant                  :        C.A. CASE NO. 2010 CA 30

v.                                       :        T.C. NO.    09CV75

RANDALL MORTGAGE SERVICES, INC.   :        (Civil appeal from
et al.                                            Common Pleas Court)

    Defendants-Appellees                 :

                                         :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____25th____ day of ____March____, 2011.

. . . . . . . . . .

DON A. LITTLE, Atty. Reg. No. 0022761, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459
    Attorney for Plaintiff-Appellant

CHRISTOPHER C. CATHEY, Atty. Reg. No. 0071231, 600 Vine Street, Suite 2800, Cincinnati, Ohio 45202
    Attorney for Defendant-Appellee Sheri Mull

. . . . . . . . . .

BROGAN, J. (by assignment)

{¶ 1}   James C. Bealer appeals from the summary judgment granted in favor of

Sheri L. Mull in the Clark County Common Pleas Court.

{¶ 2}   On January 21, 2009, Bealer filed a complaint alleging that Randall Mortgage

and its agent Mull fraudulently induced him in the refinancing of his home to accept a "negative amortization" loan and by joining with defendant Clark Appraisal and Associates to make him believe that his home had a fair market value of $255,000 when, in fact, the property was worth $185,000. In particular, Bealer alleged that Mull and Randall Mortgage concealed from him that the principal amount owed on his mortgage would rise with each and every mortgage payment he made. He contended that the fraudulent actions of all the defendants caused him substantial damage because his property now had a mortgage against it in excess of its fair market value. He contended he had to obtain a new traditional mortgage which raised his monthly payments by one thousand dollars. Bealer never obtained service upon defendants, Randall Mortgage or Clark Appraisal and Associates.

{¶ 3} Mull answered Bealer's complaint and denied she committed any fraud in her dealings with him. She counterclaimed contending that Mull had filed a frivolous lawsuit and she requested that she be awarded attorney's fees and costs of the litigation. Mull then moved for summary judgment and attached her affidavit in support of her motion.

{¶ 4} Mull stated in her affidavit the following:

{¶ 5} "1. I have personal knowledge of the facts set forth in this affidavit.

{¶ 6} "2. I was a Senior Finance Officer at Randall Mortgage Services, Inc. ('Randall') until May of 2007 when Randall went out of business. I assisted the Plaintiff James C. Bealer with the refinancing of his mortgage loan in February 2006.

{¶ 7} "3. On January 23, 2006, a telemarketer for Randall made contact with Mr. Bealer to discuss whether he was interested in refinancing his mortgage related to his property located at 2249 Newlove Road, South Charleston, Ohio 45368 (the 'Property').

**{¶ 8}** "4. During the phone conversation with the telemarketer, Bealer stated that the Property had been appraised at $225,000 in connection with a home equity line he obtained from Chase Home Finance in March of 1998 to do several home improvements.

**{¶ 9}** "5. On February 1, 2006, I spoke with Bealer by phone to discuss a possible refinance. We discussed his current financial situation, including the balances and interest rates on his first and second mortgages with Chase Home Finance. We also discussed that he had approximately $50,000 in credit card debt. Mr. Bealer had been inquiring about refinancing his mortgage and he was considering filing bankruptcy due to his high credit card debt.

**{¶ 10}** "6. I explained a few loan options to Mr. Bealer. He was particularly interested in a debt reorganization plan that would allow him to initially pay a lower mortgage payment so that he could devote more of his cash flow toward eliminating his credit card debt. Bealer selected a Twelve-Month MTA (Monthly Treasury Average) Option Arm (the 'MTA Loan') which provided him with three payment options: (1) minimum payment with deferred interest; (2) interest only; and (3) thirty-year amortized principal and interest. Bealer and I decided to schedule an in-person meeting on February 3, 2006, to discuss the MTA Loan further and review the disclosures for the loan. We agreed to meet in Miamisburg, Ohio. Bealer said that he intended to bring his attorney to the meeting.

**{¶ 11}** "7. Mr. Bealer appeared for the meeting without his attorney. At the meeting, we went over two loan options and their disclosures, the 30-year fixed rate loan and the MTA Loan that I explained in further detail. I explained the MTA Loan in writing and

reviewed with him a written analysis of the loan. See Explanation of Loan, a true and accurate copy of which is attached hereto as Exhibit A. I also gave Bealer the Consumer Handbook on Adjustable Rate Mortgages (the 'CHARM Book'), and two brochures from Washington Mutual regarding the MTA Loan and a copy of the initial disclosures including the Good Faith Estimate. True and accurate copies of the loan product brochures are attached hereto as Exhibit B. One of the disclosures that Bealer signed was the Loan Program Disclosure, which described the negative amortization feature of the MTA Loan. A true and accurate copy of the Loan Program Disclosure is attached hereto as Exhibit C. I reviewed the legal disclosures with Bealer and he signed them. Mr. Bealer told me that he would have his attorney and accountant review the MTA Loan and the paperwork I provided to him.

{¶ 12} "8. On February 6, 2006, Bealer and I spoke by phone. Bealer informed me that his accountant thought that it was a great loan for Bealer's current financial situation. He gave me the go ahead to move forward. I then ordered an appraisal of the Property.

{¶ 13} "9. I am not a licensed appraiser and do not appraise homes. I had not originated a mortgage loan in Clark County and was unfamiliar with the residential appraisers in the area. I ordered an appraisal from Clark Appraisal Service. This was my first experience with Clark Appraisal Service. Mull asked Clark Appraisal Service to simply give a fair market value for the Property. I did not ask Clark Appraisal Service to achieve a specific value and I did not influence the appraiser's work in any way.

{¶ 14} "10. Clark Appraisal Service determined that the Property had a fair market value of $255,000, which I trust and expect is an accurate fair market value performed in

accordance with the law and the appropriate industry standards. I had no reason to believe there were any inaccuracies or misrepresentations in the appraisal performed by Clark Appraisal Service. A true and accurate copy of the Appraisal is attached hereto as Exhibit D. In fact, given Bealer's comment to me that he had the property appraised at $225,000 in connection with the previous home equity loan, $255,000 appears to be reasonable after several years of appreciation. In addition, Bealer had his home insured for $252,500 in 2005 prior to applying for the MTA Loan (which did not include the land). A true and accurate copy of the homeowner's insurance declarations page is attached hereto as Exhibit E.

**{¶ 15}** "11. My belief is further confirmed by the fact that BankUnited ordered an independent review appraisal. A true and correct copy of the review appraisal is attached as Exhibit F. It is my understanding that the review appraisal determined that the $255,00 fair market value was supportable.

**{¶ 16}** "12. The MTA Loan closed on February 27, 2006. I attended the closing. A true and accurate copy of the Settlement Statement is attached hereto as Exhibit G. At the closing, Bealer signed the Adjustable Rate Note, a true and accurate copy of which is attached hereto as Exhibit H. He also signed another Loan Program Disclosure that reiterated the negative amortization feature of the MTA Loan. A true and accurate copy of the Loan Program Disclosure signed at closing is attached hereto as Exhibit I. Bealer also signed a Private Mortgage Insurance Disclosure ('PMI Disclosure') that explained the negative amortization feature of the loan. A true and accurate copy of the PMI Disclosure is attached hereto as Exhibit J.

{¶ 17} "13. Bealer also received at closing an Amortization Schedule that detailed the payments for the loan and demonstrated that the loan balance was going to increase over the amount borrowed in the promissory note for the first 142 payments. A true and accurate copy of the Amortization Schedule is attached hereto as Exhibit K."

{¶ 18} Bealer's counsel filed a memorandum in opposition to Mull's summary judgment motion and affidavit. He also moved to strike portions of Mull's affidavit because it included matter not based on personal knowledge. Bealer stated in an affidavit that all the facts in counsel's memorandum were true. In particular, Bealer asserted that Mull fraudently induced him into accepting the new mortgage by promising him that his house would be worth $255,000 and by promising a social or dating relationship between them if he entered into the mortgage.

{¶ 19} In the memorandum counsel stated the following:

{¶ 20} "Plaintiff wanted to refinance his house but each time his house would only come to $185,000.00, which was less than what Plaintiff needed. When Plaintiff met with Defendant Mull, Plaintiff asked Mull how she was going to get the house appraised for a higher value. Defendant Mull responded by saying, 'Don't worry, we will get what we need.'

{¶ 21} "As part of the loan approval process, Defendant Mull arranged for an appraisal of Plaintiff's home by Clark Appraisal and Associates, Inc. (hereafter Defendant Clark Appraisal). Mull claims that it was her first experience with Clark Appraisal and that she asked Clark Appraisal to simply give a fair market value for the property. Defendant Mull claims that she did not ask Clark Appraisal to achieve a specific value or influence the

appraiser's work in any way.

{¶ 22} "Defendant Clark Appraisal appraised Plaintiff's property at the fair market value of $255,000.00. The Clark appraisal did not occur until February 8, 2006. However, in the Uniform Residential Loan Application signed by Defendant Mull on February 7, 2006, Mull included the market value of the house as $255,000.00. This was signed by Mull before the Clark appraisal took place.

{¶ 23} "Subsequently Plaintiff had an official appraisal performed by Ray and Smith Appraisal Services, Inc. (hereafter Ray and Smith), whose appraisal was $185,000.00. Ray and Smith told Plaintiff that the Clark appraisal was definitely not done correctly and was, in effect, padded.

{¶ 24} "It was Defendant Mull that arranged for the appraisal by Clark Appraisal. Defendant Mull made statements that the property would get a higher appraisal than Plaintiff had gotten before. Mull signed and dated the loan application stating the fair market value of the house to be $255,000.00, before the appraisal had taken place. Defendant Mull's representation was made knowingly because it was made prior to the actual appraisal. Mull promised a social or dating relationship with Plaintiff if Plaintiff entered into the mortgage. Plaintiff would have never entered into the mortgage if it were not for the acts of Defendant Mull."

{¶ 25} Mull moved to strike Bealer's affidavit because she asserted the statements contained therein were not based on personal knowledge, they failed to set forth facts that would be admissible in evidence and because it did not show that Bealer was competent to testify about the matters in the affidavit as required by Civ.R. 56(E) of the Ohio Rules of

Civil Procedure. Specifically, Mull argued that the statement that an official at Ray and Smith Appraisal Services told him that his property was worth $185,000 and that the Clark appraisal was not done correctly and was padded was inadmissible hearsay.

{¶ 26} Bealer then filed a motion to supplement his previous affidavit with a xerox copy of the appraisal of his home prepared by Smith and Ray. This appraisal did not contain a statement that the Clark appraisal was padded.

{¶ 27} The trial court granted Mull's motion for summary judgment without ruling on the parties' motions to strike their affidavits. The court found "there was no evidence to establish fraud against Mull and Mull did not do anything unlawful in connection with this loan." The court found there was no just reason for delay and determined the order was a final appealable one.

{¶ 28} In a single assignment of error, Bealer contends the trial court erred in granting Mull summary judgment. In his brief, Bealer stated he is not arguing the reverse mortgage claim of fraud and that his assignment is directed at whether the appraisal was fraudulently induced or caused by Mull. Bealer argues if a loan processor (Mull) is able to put on a Uniform Residential Loan Application the exact amount of an appraisal one day prior to the appraisal's actually being submitted, there is a genuine issue of fact as whether Mull fraudulently influenced the loan amount.

{¶ 29} Mull argues that Bealer failed to demonstrate that a genuine issue of material fact existed regarding his fraud claim. Mull argues that Bealer did not refute her sworn statement that she never worked with Clark Appraisal before or that she didn't "simply ask Clark to simply give a fair market value for the property." Mull notes that Bealer didn't

refute her sworn statement that she did not ask Clark to provide a specific appraisal amount for Bealer's home or refute her statement that she trusted the Clark Appraisal "to be an accurate fair market value performed in accordance with industry standards."

{¶ 30} Mull also notes that she stated in her affidavit that she had no reason to question Clark's appraisal because Bealer told her that he had his home appraised several years earlier for $225,000 in connection with a previous home equity loan. She also points to her sworn statement that Bealer had his home insured for $252,500 in 2005 (which did not include the land). Lastly, Mull notes that Clark certified in its appraisal that it was a disinterested and unbiased third party and its employment and appraisal was not conditioned on any agreement that it would report a predetermined value for Bealer's property.

{¶ 31} The movant for summary judgment must demonstrate with supporting material that there are no material facts in dispute and that the movant is entitled to a judgment in its favor as a matter of law. A summary judgment shall not be rendered unless it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. That party is entitled to have the evidence construed most strongly in the party's favor. Civ.R. 56(C).

{¶ 32} "[T]he elements of fraudulent inducement are: (1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction; (3) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (4) intent to induce reliance on the representation; (5) justifiable reliance; and (6) injury

proximately caused by the reliance." *Simon Property Group, L.P. v. Kill*, Allen App. No. 1-09-30, 2010-Ohio-1492, ¶17, citing *Info. Leasing Corp. v. Chambers,* 152 Ohio App.3d 715, 2003-Ohio-2670, and *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55. "Fraudulent inducement must be proven by clear and convincing evidence." Id., citing *Mid-America Tire, Inc. v. PTZ Trading Ltd.,* 95 Ohio St.3d 367, 2002-Ohio-2427, ¶ 62.

**{¶ 33}** Construing the evidence in Bealer's favor, the trial court properly granted Mull's summary judgment motion. If we assume Mull knew that Clark had appraised Bealer's home for $255,000 the day before its written appraisal was signed, this does not create an inference that Mull and Clark conspired to inflate the value of Bealer's home for loan purposes. The fact that Clark and Ray and Smith disagreed on the proper appraisal figure also does not create an inference that Clark and Mull engaged in a conspiracy to defraud Bealer. There was considerable evidence that Clark's appraisal was a reasonable one. Bealer's property had been appraised several years earlier for $225,000 for loan purposes and $252,000 for insurance purposes. The depreciation in real estate prices did not begin until late 2008, well after the appraisal rendered by Clark. The appellant's assignment of error is overruled.

**{¶ 34}** The judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and HALL, J., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Don A. Little

Christopher D. Cathey
Hon. Douglas M. Rastatter